(No. 18172.—Judgment reversed and award confirmed.)

THE SUPERIOR COAL COMPANY, Defendant in Error, *vs.*
THE INDUSTRIAL COMMISSION *et al.*—(JOE SCHIEALL,
Plaintiff in Error.

*Opinion filed June 22, 1927—Rehearing denied October 11, 1927.*

WORKMEN'S COMPENSATION—*when want of proper treatment
will not preclude compensation for injury to eye.* Where the evi-
dence justifies the conclusion that an accident in the course of
employment resulted in a minor injury to the eye, the fact that
the employee at first neglected to give it proper treatment or may
have given it improper treatment will not preclude an award of
compensation for loss of the eye which finally resulted even though
the injury would not have been serious if it had been properly at-
tended to at once, where the conduct of the employee was such as
a reasonably prudent person would have adopted in his situation.

WRIT OF ERROR to the Circuit Court of Macoupin
county; the Hon. FRANK W. BURTON, Judge, presiding.

A. W. KERR, and JOSEPH A. LONDRIGAN, for plaintiff
in error.

VAUGHN & NEVINS, for defendant in error.

Mr. JUSTICE DUNN delivered the opinion of the court:

The circuit court of Macoupin county having set aside
an award of the Industrial Commission against the Supe-
rior Coal Company in favor of Joe Schieall, a writ of error
was allowed on his petition to review the judgment.

The plaintiff in error, an employee of the Superior Coal
Company, on December 24, 1925, being alone, was setting
a prop, on top of which he undertook to drive a wedge or
cap-piece. In doing so he struck the roof with his sledge
hammer, scratching the sulphur so that some of it fell into
his left eye. He finished setting the prop and went home.
The mine was not in operation on the 25th, 26th or 27th,
and during that time the plaintiff in error was not bothered
much by his eye. He testified before the arbitrator that on

the 28th the eye was red and sore and he went to Dr. Senelick, who was his family doctor. He is probably mistaken about the date, however, for he also testified that he treated his eye for about eight days with some medicine which Dr. Morris, of Springfield, had given for the use of the plaintiff in error's son, whose eye had been hurt in the mine almost three years before, and on the hearing before the commission Dr. Senelick testified as a witness called by the employer, that he had no record of having been consulted prior to January 4, the date which his record shows of the first visit to his office. On that date two visits were made, on January 6 two and on January 7 one. On the 4th there was a well developed ulcer of the cornea and the eye was generally inflamed. The doctor thought the ulcer was the former site of a foreign body but was unable to find any foreign body. The condition did not improve but on the 7th was aggravated, and the doctor advised the plaintiff in error to consult a specialist. The plaintiff in error testified that he did not work on the 28th, or until March 1, because of the condition of his eye. He reported the accident at the mine office on January 8 and was examined and treated by Dr. Sullivan, mine physician at Gillespie, who found the eye badly inflamed, with a hazy area over the entire pupil, and sent the plaintiff in error to Dr. Morris, at Springfield, a specialist in diseases of the eye. He first examined the plaintiff in error on the 9th. There was then a very severe ulcer covering most of the pupillary area, the inner half of the cornea was hazy, due to an infiltration into the tissue of the cornea, and the inside of the eye was about one-fourth or one-fifth filled with pus from a perforating ulcer, letting the pus drain down on the inside. It had the appearance of having got in there probably from some particle of dust that caused a break and infection in the corneal epithelium, which usually occurs within forty-eight hours. As it did not show up until four days it was at first a minor matter, which developed seriously because of neglect

and improper treatment. The doctor testified that he had treated the son of the plaintiff in error in August, 1923, and if he then gave him some medicine which was kept until the first of the year 1926, if there would be any liquid left it would be almost a mass of crystals, the putting of which into the eye might have caused a traumatic injury the same as any other foreign body. Any foreign body in the eye which resulted in irritation might have caused the condition which the doctor found on January 9. Dr. Morris put the plaintiff in error in the hospital under treatment until February 18. The eye had then completely healed, leaving a scar covering most of the pupillary area, with a vision of about five two-hundredths. The award of·the arbitrator, which was affirmed by the Industrial Commission and set aside by the circuit court, was $15 a week for 7-6/7 weeks' temporary incapacity and $15 a week for 110 weeks for total blindness of the left eye.

No questions are presented except questions·of fact. In the brief of´the defendant in error it is said: "The questions in issue before the arbitrator, and the commission on review, were whether the petitioner sustained an accidental injury on the day alleged, arising out of and in the course of his employment, and if so, the nature and extent of the injury and the amount of compensation due or which might become due, and the further question of what portion of the amount on account of his condition was due to his failure to receive proper medical treatment in time to prevent loss of vision or partial loss of vision, in the event petitioner was entitled to receive compensation," and these are the questions which were presented to the circuit court and are now before us for consideration.·

If the testimony of the plaintiff in error be credited,— and there is nothing in the record to show that it is unworthy of belief,—he did suffer an accidental injury to his eye of minor importance, which he did not pay any attention to and did not think it necessary to report the first

day. He testified: "Sometimes you get a little dust in your eyes when working the mine, but you clean it and everything is all right." He merely followed the custom in respect to like accidents. The eye became inflamed. His testimony that he used some medicine which his boy brought home from Springfield two or three years before, and Dr. Morris' testimony that there would be very little liquid left in that time,—the medicine would have become almost a mass of crystals,—is a very slight and unsatisfactory basis for the inference that the plaintiff in error put crystals into his eye. Dr. Morris did not testify that the medicine had become crystallized in the process of evaporation, and, of course, could not, for he did not see the medicine or the container in which it was kept and could not know whether the evaporation was such as to produce crystallization. At any rate, it would be acting on remote and improbable possibilities to conclude that the plaintiff in error voluntarily put crystals into his eye, by which the eye was scratched and afterward became infected. The eye was inflamed on December 28, which was within the period of time during which an infection of the eye following the accident might have been expected, if at all, as Dr. Morris testified. The evidence justified the conclusion that the accident resulted in a minor injury to the eye, which because of neglect and improper treatment had a serious conclusion.

Because of the slight character of the original injury, the plaintiff in error, not foreseeing the possible consequences, in accordance with the conduct of an ordinarily prudent man under like circumstances ignored any treatment of it at first other than the removal of the foreign substance, and only appreciated the possible serious results of the injury as the condition of the eye gradually developed. That he acted in this manner is no reason for denying him compensation. In the case of *Bailey* v. *Industrial Com.* 286 Ill. 623, the employee accidentally broke his leg. While convalescing he suffered another fracture in remov-

ing his trousers. When he had so recovered as to be able to walk about by the use of two canes, while he was walking along a sidewalk he unexpectedly stepped off into an intersecting alley whose surface was six or seven inches below the level of the sidewalk and the leg was again broken at the same place. An award for the time of recovery as extended by the last fracture was contested on the ground that it resulted from an independent injury, but it was held that the question was one of fact, and the evidence justified the conclusion of the commission that the fall and further injury were due to the original injury and the fact that the employee had not fully recovered from it. In the case of *Hammond Co.* v. *Industrial Com.* 288 Ill. 262, the employee had suffered an injury to his leg which resulted in an abscess and osteomyelitis, for which an operation was performed, weakening the bone. The attending physician ordered him kept in bed, but later an interne in the hospital permitted him to get out of bed, and he fell and broke the bone at the place where it had been weakened by the operation. Death resulted from osteomyelitis, lowered resistance from long illness, hemorrhage and shock. It was held that an award for the death was justified by the evidence.

As in those cases, so here, the most that can be urged against the award is. that the injury would not have resulted seriously had proper treatment been given promptly. The injury, however, was apparently so slight and of so frequent occurrence that no serious result would ordinarily be anticipated. If the conduct of the plaintiff in error was such as a reasonably prudent person would adopt in his situation and circumstances, even though the result of the original injury would have been less harmful if a different course had been adopted, it was within the province of the commission to find that the original cause continued to the end and accomplished the final result and was therefore the proximate cause. *Bethlehem Shipbuilding Corp.* v. *Industrial Accident Com.* 181 Cal. 500.

The award was justified by the evidence. The circuit court erred in setting it aside, and its judgment will be reversed and the award of the commission confirmed.

*Judgment reversed and award confirmed.*