(No. 22197.—

RAYMOND E. GIDLEY, Defendant in Error, *vs.* THE INDUS-TRIAL COMMISSION *et al.*—(THE CHICAGO SHORT LINE RAILWAY COMPANY, Plaintiff in Error.)

*Opinion filed February 23, 1934—Rehearing denied April 10, 1934.*

KNAPP, BEYE, ALLEN, COCHRAN & CUSHING, (JOSEPH L. EARLYWINE, and PAUL R. CONAGHAN, of counsel,) for plaintiff in error.

H. A. BARNHARDT, for defendant in error.

Mr. JUSTICE SHAW delivered the opinion of the court:

On May 9, 1927, Raymond E. Gidley, the defendant in error, received personal injuries while working for the Chicago Short Line Railway Company, the plaintiff in error, through jumping off an engine which was about to collide with a coal chute. He started suit in the superior court of Cook county against the plaintiff in error for personal injuries under the Federal Employer's Liability act, upon the theory that both he and his employer were engaged in interstate commerce at the time of the injury, and in that suit he secured a verdict of a jury awarding him damages in the sum of $26,000. After requiring him to remit $12,000, the trial court entered a judgment in his favor in the sum of $14,000. This judgment was affirmed by the Appellate Court, but was afterwards reversed by this court on the ground that the parties were not engaged in interstate commerce. The Supreme Court of the United States thereafter denied a writ of *certiorari,* making the judgment of this court final. The opinion of this court in that case was filed October 23, 1931, and a rehearing denied December 2, 1931. During the progress of this litigation defendant in error had protected his rights under the Workmen's Compensation act of Illinois, and had, on May 9, 1928, just one year after the injury, filed with the Industrial Commission a petition for adjustment of claim, the railway company having failed to make any application for adjustment of compensation during the year. No evidence was heard in the proceeding before the Industrial Commission until May 9, 1932, just five years after the original injury. Upon the hearing before the arbitrator all necessary facts were stipulated except as to the extent of the injury. The arbitrator made an award of 130 weeks' temporary total disability and in addition thereto a finding and award of thirty-five per cent total permanent loss of use of the right leg. Upon review by the commission,

without any additional evidence being heard, the commission reduced the award for temporary total disability to 29-2/7 weeks and confirmed the finding that there was a thirty-five per cent permanent loss of use of the leg. On *certiorari* the superior court of Cook county set aside the order of the commission and re-instated the award made by the arbitrator, and upon leave granted this writ of error was issued to review the judgment of the superior court.

It is conceded in the briefs of the plaintiff in error that the award of thirty-five per cent total disability of the right leg is reasonable and should be sustained, it being the only contention in this court that the award for temporary total disability should be reduced in accordance with the order of the commission, upon a theory that all of the defendant in error's disability in excess of 29-2/7 weeks is due to his refusal to submit to a surgical operation on his knee, reliance being placed upon paragraph (*d*) of section 19 of the Workmen's Compensation act, which is as follows: "If any employee shall persist in insanitary or injurious practices which tend to either impair or retard his recovery or shall refuse to submit to such medical, surgical, or hospital treatment as is reasonably essential to promote his recovery, the commission may, in its discretion, reduce or suspend the compensation of any such injured employee."

Evidence of the opinion of four doctors appears in the record, three of whom testified in person. The other one being dead at the time of the hearing, one of the attorneys was permitted to testify to the substance of what that doctor had advised, which evidence was received without objection. There is no dispute as to the diagnosis of the defendant in error's trouble in the knee, all of the medical witnesses having determined that his temporary total disability of two and a half years, or 130 weeks, was in part due to a fracture of the semi-lunar cartilage in the right knee joint. They also all agreed that there is a feasible operation for a cure of that kind of a situation, but they

disagreed rather radically as to the dangers involved in such surgical procedure and as to its advisability.

The defendant in error testified in his own behalf that he was on crutches for a year and thereafter had to use a cane for nearly two years after discarding the crutches. He testified that he was unable to do any work at all for two and one-half years. Inasmuch as this evidence is not controverted in any way and is the only evidence in the case on the question of the period of his temporary total disability it is necessarily accepted as a fact.

The first medical witness, Dr. A. C. Tenney, testified that he first saw the defendant in error on June 30, 1927, and that at that time, in his opinion, there was a floating internal semi-lunar cartilage in the right knee joint. He testified that he recommended an operation; that he saw the case again in December of 1928, and that he had seen it several times in between these two dates; that he had examined the patient the Friday before the hearing, which would be approximately five years after the accident, and that upon the last examination there was a considerable improvement in the condition of the knee although the trouble was still present. At the time of the hearing this doctor still recommended an operation. He admitted in this examination that in his opinion there were very few surgeons competent to perform this operation on the knee and that there is danger in it, the chief danger being the possibility of an infection, which would result in a permanently stiff knee, and that the knee is particularly incapable of resisting an infection.

Dr. George Davis testified that he had examined the defendant in error on the 20th day of November, 1927, at the request of the railway company; that he had offered him an operation at the expense of the railway company, and that he himself offered to do the operation at the county hospital if the railway company would not. He further testified that he had performed "twenty, forty or

sixty" operations for dislocated semi-lunar cartilages and that he had had no complications, and that the temporary disability resulting from such an operation would be from one to two and a half months. On cross-examination he stated that in his opinion an operation cutting off a hand would be simpler and less dangerous than going into a knee joint.

H. A. Barnhardt, the defendant in error's attorney, testified, without objection, that in the summer of 1928 he had gone with the defendant in error to see a Dr. Hesser, then practicing on Fullerton avenue, who died in December of 1928, and that doctor had in his presence advised the defendant in error not to have an operation and told him that it was dangerous to operate on a knee joint.

Dr. A. W. LaForge testified that he examined the defendant in error on December 8, 1928, and that he diagnosed a fracture and dislocation of the semi-lunar cartilage of the right knee, with a probability that a piece of it was detached at the knee joint. He further testified that at the time of this examination, which it will be noted was more than one and a half years after the injury, he advised the defendant in error not to have an operation on the knee but to await further developments; that the operation could be performed at any time, and that the dangers of such an operation, even at the hands of the best qualified surgeons, were great. He further testified that he had again examined the defendant in error on the Friday before the hearing, approximately five years after the injury, and that he could still not recommend a surgical operation.

Defendant in error testified that he would not consent to an operation because three doctors had told him it was not advisable.

This is the substance of all of the testimony bearing on the question. In it all, the only direct evidence of an authorized offer of an operation is that of the attorney for the Chicago Short Line Railway Company, Joseph L.

Earlywine. He testified that he was the trial lawyer for the railway company in the superior court of Cook county, which case was tried in 1928; that he was familiar with the claim of the defendant in error before the lawsuit started, and that he was empowered to offer him an operation on behalf of J. Fred Sheehy, president of the Chicago Short Line Railway Company. He said: "I offered him an operation at the company's expense in the presence of Dr. Davis and in his office on the date Dr. Davis examined Mr. Gidley. [November 20, 1927.] That operation was refused." It is apparent from this statement of facts that when this offer of an operation was made to the defendant in error the parties were not standing in that relation to each other which is contemplated by paragraph (d) of section 19 of the Compensation act. There was at that time nothing pending before the Industrial Commission, neither the employer nor the employee having made application for adjustment of compensation. Although either party might have made such an application neither one of them had as yet done so, and it was therefore impossible at that time to arrive at any authoritative determination as to whether or not the injured employee should submit to surgery. The demand was rather that of a defendant in a serious lawsuit against the plaintiff in that lawsuit for which there was neither statutory authority to make the demand nor statutory duty to submit. There is no authority in this State which is cited to us, and we know of none, which authorized any such demand in a civil suit, and so far as the matter has been passed upon by this court in compensation cases it has been held that it is for the commission to determine whether or not an operation may be required. (*Pocahontas Mining Co.* v. *Industrial Com.* 301 Ill. 462.) In *Rosenthal & Co.* v. *Industrial Com.* 295 Ill. 182, we said: "Whether the operation is reasonably essential is for the Industrial Commission to determine, based upon the evidence submitted to it." In the same case

we said: "Naturally, each case must depend largely upon its special facts." Section 18 of the Compensation act provides: "All questions arising under this act, if not settled by agreement of the parties interested therein, shall, except as otherwise provided, be determined by the Industrial Board." In *Whittika* v. *Industrial Com.* 322 Ill. 368, we said: "It was the duty of the Industrial Commission to determine whether the employee should submit to the operation and whether it was reasonably essential to promote his recovery, and if the commission determined that an operation was reasonably necessary and the employee refused to submit to it, the employer should not be compelled to pay compensation."

The wording of the section of the Compensation act which is called in question is to be noted in this connection. Its provision is, that if the injured employee "shall refuse to submit to such medical, surgical, or hospital treatment as is reasonably essential to promote his recovery, the commission may, in its discretion, reduce or suspend the compensation," etc. The plaintiff in error would have been within its rights in seeking an adjustment of this claim at an earlier date and in seeking an order from the Industrial Commission requiring the defendant in error to submit to what it considered to be a reasonable surgical operation. This was not done and the demand was not made under the provisions of the Compensation act. Clearly, the Industrial Commission could not make an order either reducing or suspending compensation when no compensation had been allowed, nor could it make an order requiring a surgical operation when no proceeding was pending before it. The demand in this case was not such a demand as the defendant in error was bound to comply with.

Inasmuch as the demand for an operation was not made under the Compensation act, it necessarily follows that paragraph (d) of section 19 of that act does not apply and the question before the arbitrator and the Industrial Com-

mission was not as to the application of that act. The only point open for inquiry was whether, as a matter of law, the conduct of the defendant in error had been so arbitrary and unreasonable that the disability could be said to have resulted from his own misconduct rather than from the original injury. In other words, the question for determination was one of proximate cause—*i. e.,* did the two and one-half years' proven disability result from the original injury or from the subsequent misconduct of the employee in neglecting to use reasonable surgical means for its alleviation? Was his conduct subsequent to the injury such as a reasonably prudent person would adopt in his situation and circumstance? (*Superior Coal Co.* v. *Industrial Com.* 326 Ill. 584.) On this issue the plaintiff in error had the burden of proof. In the case of *Gorral* v. *Hamlin & Sons,* 38 R. I. 249, 94 Atl. 877, it was held in a well reasoned opinion that where the employee has established the liability, the burden of proof is upon the employer if he claims that the disability has been aggravated or a cure prevented by the negligence of the employee, and that in such a case it is proper to resolve all doubts in favor of the employee. The justness and reasonableness of this rule are apparent when considered in the light of our previous decisions on this point and our oft-repeated holding that the Compensation act is to be construed liberally for the preservation of its remedial ends.

It is true that Dr. Tenney testified that he recommended an operation on the knee, but at the same time he admitted that such an operation was dangerous because of the possibility of an infection, which would result in a permanently stiff joint, and that the knee is particularly incapable of resisting infection. It is also true that Dr. Davis, who was employed by the railway company, recommended an operation, but he also admitted that it would be a more dangerous operation than cutting off a hand. Drs. Hesser and LaForge each advised against an operation, but

all of the doctors testified to its difficulties and dangers, Dr. LaForge, who was the defendant in error's own physician, advising that the operation could be performed at any time, and that the sensible thing to do would be to wait and see if the matter could not be cured without assuming that risk. The defendant in error himself testified that his reason for refusing an operation was because of the advice of his doctors and his disinclination to take a chance on a permanently stiff knee. In passing upon a precisely similar case—*i. e.*, a fractured semi-lunar cartilage in the knee joint, where the matter of requiring an operation was before the Industrial Commission—the Supreme Court of Oregon used the following language: "It would be surprising to find a provision in our statute giving arbitrary power to the commission or making the workman's right of refusal dependent upon medical opinion alone and entirely ignoring the viewpoint of the workman, who is the only one who must take the risk that is involved, must endure whatever suffering is to be borne and must accept whatever ill-effects may result from the operation." (*Grant* v. *Industrial Accident Com.* 201 Pac. 438.) Under the practice in Oregon, in that case the question was submitted to a jury as to whether or not the injured workman should have submitted to an operation, and, the jury having determined the issue in favor of the workman, the Supreme Court held that the question had been properly submitted to the jury and refused to disturb the jury's verdict. The workman in that case, as in this one, had received conflicting advice from surgeons, but all of them had agreed that a knee-joint operation was a hazardous matter.

This question is not new in Illinois, although there is no case fully in point on the facts. In the case of *Superior Coal Co.* v. *Industrial Com.* 326 Ill. 584, the injured workman got a piece of sulphur in his eye which he did not consider particularly serious. He tried to treat

it himself and also used in it some old medicine that had been secured from a doctor about three years previously by another member of his family. This negligent and careless treatment of the eye resulted in total blindness, for which an award was made, and the question before this court for decision was what portion of the amount of injury was due to the workman's failure to receive proper medical treatment in time to prevent loss of vision. The evidence justified the conclusion that the accident resulted in a minor injury to the eye, which, because of neglect and improper treatment, had a serious conclusion. In determining the case this court applied the rule, which is sustained by practically all of the American and English authorities, that the question for determination was whether or not the injured employee had acted in accordance with the conduct of an ordinarily prudent man under like circumstances. We said: "If the conduct of the plaintiff in error was such as a reasonably prudent person would adopt in his situation and circumstances, even though the result of the original injury would have been less harmful if a different course had been adopted, it was within the province of the commission to find that the original cause continued to the end and accomplished the final result and was therefore the proximate cause." *Bethlehem Ship Building Corp.* v. *Industrial Com.* 181 Cal. 500, 7 A. L. R. 1180, 185 Pac. 79.

In the case before us neither the Industrial Commission nor this court would be justified in saying that the conduct of the defendant in error was such as to deprive him of his compensation. While an operation might have cured his knee, it might also have made it much worse through giving him a permanently stiff and immovable joint in place of one which was only partially and from time to time immovable. There is no showing of bad faith, and we can see no more reason for his following the advice of the company's doctors than the advice of those of his own

choosing. The limits within which surgery may be insisted on by an employer have heretofore been clearly defined by this court, and this case on its facts does not come within them. *Pocahontas Mining Co.* v. *Industrial Com. supra; Joliet Motor Co.* v. *Industrial Board,* 280 Ill. 148; *Rosenthal & Co.* v. *Industrial Com. supra; Whittika* v. *Industrial Com. supra.*

The Industrial Commission having entered an order contrary to the weight of the evidence and not having made any specific finding of fact to the effect that the physical condition of the injured employee was due to any arbitrary or unreasonable action on his part, the superior court did not err in setting aside the order of the commission and re-instating the award made by the arbitrator. *Long* v. *Industrial Com.* 347 Ill. 250; *Berry* v. *Industrial Com.* 335 id. 374.

The judgment of the superior court is therefore affirmed.

*Judgment affirmed.*