(No. 26693.—

John Florczak, Plaintiff in Error, *vs.* The Industrial Commission *et al.*—(Old Ben Coal Corporation, Defendant in Error.)

*Opinion filed November 17, 1942.*

M. J. HANAGAN, for plaintiff in error.

ANGERSTEIN & ANGERSTEIN, and WILLIAMS & HARRISON, (THOMAS C. ANGERSTEIN, and CARTER H. HARRISON, of counsel,) for defendant in error.

Mr. JUSTICE MURPHY delivered the opinion of the court:

On January 21, 1931, plaintiff in error, John Florczak, received an accidental injury which arose out of and in the course of his employment with the Old Ben Coal Corporation. While engaged at his employment in loading coal on a conveyor, he was struck on the left leg by a cardox shell, thereby fracturing the femur at about the juncture of the lower with the middle third. He sustained no other injuries that are of any moment on the questions raised.

Plaintiff was given hospital care extending over a period of months and received medical care from Dr. Modert and the employer's physician and surgeon, Dr. MacGregor. Soon after he was taken to the hospital the first time, a serious infection developed in the left leg at the site of the fracture. A discharging sinus followed which would not respond to treatment. Some of the medical witnesses called by plaintiff stated they examined him in April, 1938, and that there was discharge from the sinus on the lateral and anterior side of the left leg, that there was osteomyelitis or inflammatory disease of the femur and that there was systemic infection. A medical witness called by the em-

ployer at a hearing before the commission testified he examined plaintiff October 9, 1940, and that he found a small discharging sinus.

Immediately following the injury, but without proceedings before the Industrial Commission, the employer began making weekly compensation payments to plaintiff and continued until December 1, 1935. The payments aggregated $3810, which was paid to cover 64 weeks of temporary disability, and a further period of 190 weeks for the loss of the use of the leg. These items of compensation thus paid equalled the amount plaintiff would receive for temporary disability under paragraph (b) of section 8, and the loss of the use of a leg under subparagraph 15 of paragraph (e) of section 8 of the Workmen's Compensation Act. Ill. Rev. Stat. 1941, chap. 48, par. 145.

On the 19th of December, 1935, plaintiff filed application with the Industrial Commission for adjustment of compensation and in it alleged he received an accidental injury to the left leg January 21, 1931. There was no specific allegation in the application that the accidental injury to the left leg and the infectious conditions that followed caused a systemic infection impairing the heart and kidneys and creating an arthritic condition of the back. No reference was made as to the amount of compensation previously paid but under the heading of additional compensation he claimed additional amounts for medical care and attendance and as compensation claimed for 64 weeks at $15 per week for temporary total disability; $15 per week for 416 weeks partial disability and $15 per week for complete and permanent disability, including a pension for life as provided under paragraph (f) of section 8 of the act.

On the 15th of January, 1937, which was before any evidence was taken, plaintiff served a written notice on the employer in which it was stated he needed further medical, surgical and hospital care and surgical treatment to relieve the osteomyelitis or inflammatory disease of the femur and systemic infection and alleged it was caused or

brought about by the accidental injury occurring January 21, 1931. The notice contained the further statement that the demand for medical and surgical care was made under paragraph (a), section 8, and unless the employer provided such care within five days, plaintiff would procure same of his own choice but at employer's cost. In plaintiff's brief it is stated that no claim is made for medical, surgical or hospital care accruing on or prior to the date of the giving of said notice.

On the hearings before the arbitrator and commission plaintiff introduced evidence on the theory he was entitled to an additional allowance for hospital care and medical services, notwithstanding he had received first aid under paragraph (a) and full compensation under paragraph (b) and subparagraph 15 of paragraph (e) of section 8 for the injury to the leg and the loss of its use. He also sought compensation under paragraph (f) of section 8 to cover the disability following impairment of the heart, liver, kidneys and the arthritic conditions in the back, all of which he claimed were caused by the infectious conditions at the site of the injury to the leg. The employer's position was that plaintiff was not in need of further hospitalization and medical care, that his disablement was confined to the loss of the use of his leg for which he had received full compensation; and even though he needed further hospital and medical care and had suffered ailments to heart and other organs causing disability aside from the disability from loss of the use of the leg, it was contended the specific-loss provision of paragraph (e) of section 8 provided full compensation and he was not entitled to more under paragraph (f) of section 8. It was also contended that soon after the accident an offer was made by the employer to plaintiff to amputate his left leg which offer he refused and, therefore, any medical or hospital care he may now need or any disability he is now suffering due to the impairment of the heart and other parts of the body, are attributable to his refusal to accept the operation.

On the hearing before the arbitrator, plaintiff testified to the injury, the manner of its occurrence, his hospitalization and his present physical condition. He stated that at times he suffered pains in his back and was troubled with shortness of breath. Drs. Modert, Test and Field were called as witnesses by plaintiff. Dr. Modert had treated him during the several years of his affliction and Drs. Test and Field with Dr. Modert had conducted a physical examination of plaintiff a few days prior to the hearing which was in May, 1938. The substance of their evidence was that plaintiff had osteomyelitis of the bone, some systemic infection, that the sinus infection had developed an arthritis of the back, an enlargement of the glands in the left groin and that he had myocarditis. Some of them testified that he was in need of further hospitalization and surgical care. They were all of the opinion that he was totally incapacitated and that his condition was permanent.

The employer introduced the testimony of its physician and surgeon, Dr. MacGregor, who testified that a few months subsequent to the accident he offered plaintiff an operation and recommended that he have his left leg amputated. In rebuttal plaintiff testified he did not remember of Dr. MacGregor tendering an operation for the amputation of his leg.

The arbitrator found that all necessary first aid, surgical and hospital services had been provided by the employer, that plaintiff was entitled to $15 per week for a period of 64 weeks' temporary disability, to the further sum of $15 for a period of 190 weeks for loss of use of the leg, all of which the arbitrator found had been paid and for which the employer was entitled to credit.

On review before the commission further testimony was taken. Plaintiff gave a more detailed description of the pain in his chest and back. The testimony of Dr. Modert was in reference to blood counts and certain analysis of the urine. The evidence of Dr. Moore, called by the em-

ployer, was in reference to physical examinations he made of plaintiff in February and April of 1938, and February and May of 1939, and of certain blood counts and urinanalysis made about the same time. He stated there were no abnormal findings, that there was no systemic infection that was involving any organs or parts of the body. In his opinion plaintiff was not suffering any disability other than that which arose from the loss of the use of his leg.

The circuit court of Franklin county on review remanded the cause to the commission with directions to hear such other and further evidence as would be necessary to determine the rights of the parties and by its decision: "(1) Determine whether or not the Respondent tendered an operation for the amputation of his leg and the Petitioner declined to undergo a reasonable and safe operation for the amputation of his left leg, and if so whether his subsequent disability to work at a gainful occupation ought or ought not to be attributed to his voluntary action in declining to avail himself of reasonable surgical treatment. (2) Determine whether or not the Respondent is required to furnish the Petitioner further medical, surgical and hospital treatment. (3) Determine the nature and extent of Petitioner's disability as a result of the accident and the amount of additional compensation, if any, due or to become due."

On remandment plaintiff offered no further evidence but the employer introduced the testimony of Drs. MacGregor, Moore and Modert. Their testimony pertained to the operation which Dr. MacGregor had tendered plaintiff and the necessity, propriety and results to be reasonably expected from such an operation. They all agreed the amputation of a leg was a major operation. They also testified there was no evidence of any physical disability other than the loss of the use of the leg.

The commission adhered to its former findings in reference to compensation and found (a) that the necessary first aid, medical, surgical and hospital services had been pro-

vided by the employer and that the employer was not required to furnish any further or additional medical, surgical or hospital services; (b) that the employer on July 31, 1931, tendered plaintiff an operation for the amputation of his left leg; that such operation was reasonable, advisable, proper and necessary medical and surgical treatment; that plaintiff unreasonably refused to accept such operation and that, therefore, any subsequent disability to work at a gainful occupation and any disability other than loss of use of the left leg is attributed to and is due to plaintiff's voluntary and unreasonable action in refusing to accept such surgical treatment: (c) that plaintiff's permanent disability was a result of the accidental injury sustained by him and was limited solely to the left leg and that his only right to compensation was that provided for in subparagraph 15, paragraph (e) of section 8, and that he was not entitled to further or additional compensation; (d) that if any permanent disability other than loss or loss of use of the left leg had existed, it was attributable to plaintiff's unreasonable refusal to accept medical and surgical treatment tendered by the employer and was not due to the accidental injury sustained. On *certiorari,* the circuit court affirmed the findings of the commission and leave was granted for further review by writ of error.

The first question to consider is in reference to plaintiff's claim that he be allowed further hospital, medical and surgical care. Paragraph (a), section 8, provides that the employer shall provide necessary first aid, medical and surgical services, and all necessary medical, surgical and hospital services thereafter, limited, however, to that which is reasonably required to cure or relieve the effects of the injury. It will be observed the liability of the employer to furnish such care, after first aid has been furnished, is limited to that which is reasonably required to cure or relieve the effects of the injury. In this case plaintiff concedes he received all the first aid to which he was entitled

under said paragraph. His evidence indicates that the necessity for further hospital, surgical and medical care was for the purpose of furnishing relief from the effects of the injury rather than with the hope to effect a cure.

In *Newman Co.* v. *Industrial Com.* 353 Ill. 190, the employee had been furnished first aid but the conditions following the injury were such that further medical and hospital aid was needed for the purpose of relieving rather than curing the injury. The extreme seriousness of the employee's needs for further medical and hospital care was noted and it was held the employer's liability to furnish such under paragraph (a) of section 8 was continuous so long as such services were required to relieve the injured employee from the effects of the injury. The legislative intent as given to the act in that case is controlling here.

When Dr. Modert testified before the arbitrator on April 26, 1938, he stated plaintiff had been in the hospital for about a week and that he was in need of further medical, surgical and hospital treatment. The evidence of Dr. Test is to the same effect. Medical testimony offered by the employer was to the effect that at various times they observed the condition of plaintiff's leg and made physical examinations, found discharging sinuses but it was their opinion that his inability to work was limited to the disability arising from the loss of the use of the leg.

The commission did not make a finding in reference to plaintiff's physical condition. It did not determine whether he was in such condition as to reasonably require further medical, surgical and hospital services to relieve him from the effects of his injury. It did find that necessary first aid had been provided and that no liability rested upon the employer to furnish more. This was a determination of the issue of employer's liability on this point, but it does not follow that the conclusion was based upon a finding of fact that plaintiff did not reasonably require additional care to give him relief. In view of other findings it would

appear the commission was of the opinion that plaintiff's refusal to accept the operation barred any further claim for such services.

The offer of an operation for the amputation of the leg was made in July, 1931, at a time when plaintiff was recovering from what the employer's physician and surgeon described as a "tremendous infection." He testified that the operation tendered would have resulted in the amputation of the left leg "above the site of the injury in the thigh." At the time of the offer, the employer was paying weekly compensation and continued to do so for more than four years thereafter. Dr. MacGregor stated that when he tendered the operation, plaintiff was in good condition. The facts from which he drew such conclusion do not appear.

Without deciding plaintiff's contention that the employer did not follow the proper procedure to make the tender of the operation available as a defense, we are of the opinion that plaintiff's right to additional medical, surgical and hospital care should not be barred by his refusal to have his leg amputated. All the medical experts agree that the amputation of a leg under the circumstances shown was a major operation. None of the medical witnesses ventured an opinion as to the probable outcome of such an operation and there is no evidence, that is assuring, that if the operation had been performed it would have resulted in anything more than making plaintiff a one-legged man for the remainder of his life. The employer's medical testimony is to the effect that plaintiff was not, at the time of the hearing, suffering any ill effects from the injury other than the loss of the use of the leg, that he was normal, that his physical condition was good and his disability was confined to the loss of the use of the leg. If this be true, then the lapse of time has proven that there was little or no necessity for the amputation of the leg.

Many cases have been before this court to determine what effect a refusal of the employee to submit to an operation shall be given upon his compensation payments. Some of them are *Gidley* v. *Industrial Com.* 355 Ill. 586; *Whittika* v. *Industrial Com.* 322 id. 368; *Swift & Co.* v. *Industrial Com.* 302 id. 38; *Mt. Olive Coal Co.* v. *Industrial Com.* 295 id. 429; *Rosenthal & Co.* v. *Industrial Com.* id. 182; *Joliet Motor Co.* v. *Industrial Board,* 280 Ill. 148. In the cases cited and others where a similar question was considered, the operation or treatment tendered was of a minor character involving no serious suffering or risk to life or member. The conclusions reached in those cases are not controlling where the operation proposed was, as in this case, of a major character.

A majority of the courts of review in other jurisdictions have adopted the rule that where the operation tendered is of a major character and attended with serious risk to life or member, an injured employee's refusal to submit thereto is not unreasonable and compensation should not be denied on that account. (*Consolidated Lead & Zinc Co.* v. *Industrial Com.* 295 Pac. (Okla.) 210; *Guild* v. *Portland Railway Light & Power Co.* 64 Ore. 570, 131 Pac. 310; *Jendrus* v. *Detroit Steel Products Co.* 178 Mich. 265, 144 N. W. 563.) See annotations 73 A. L. R., page 1307, supplemented, 105 A. L. R. 1476. This rule is supported by the better reasoning and is in accord with what this court has declared the purpose of the Workmen's Compensation Act to be and the remedies the legislature intended to cover.

The commission found plaintiff's permanent disability was limited solely to the left leg and that the provisions of subparagraph 15 of paragraph (e) of section 8 applied exclusively and that he was not entitled to any further or additional compensation. This finding is based upon conflicting evidence. As noted, medical experts who

testified for plaintiff stated that there was systemic infection, arthritic condition had developed in the back and that he had myocarditis. The medical testimony of the employer was to the effect that plaintiff was normal for a man of his age, except for the loss of the use of the left leg, and that there was nothing to indicate that the heart or other organs of the body were in any way affected as the result of the injury. It is settled in this State that courts may not on review of an award made by the Industrial Commission disturb findings of fact of that body unless the same be manifestly against the weight of the evidence. (*Rodriquez* v. *Industrial Com.* 371 Ill. 590; *Green* v. *Industrial Com.* 337 id. 514; *Donk Bros. Coal and Coke Co.* v. *Industrial Com.* 325 id. 193.) The judgment of the trial court in sustaining that finding is affirmed.

The commission made an alternative finding to the effect that if plaintiff suffered effects of the injury other than the loss of the use of the leg, that a claim for compensation on account of same would be barred by reason of the refusal to accept the operation. It will not be necessary to further consider this finding.

That part of the judgment of the circuit court which sustained the finding of the commission that plaintiff's disability was limited to the loss of the use of the leg is affirmed. The judgment is reversed as to that part which affirmed the finding of the commission that plaintiff was barred from receiving additional hospital, medical and surgical treatment by reason of his refusal to submit to the operation that was tendered him. The cause is remanded to the circuit court with directions to set aside the judgment as to said matter and remand the cause to the commission for further evidence and findings as to plaintiff's claim for additional hospital, medical and surgical care, all to be in accordance with the views expressed.

*Affirmed in part, and reversed in part*
*and remanded, with directions.*