(No. 3970— )

WADE HAMPTON, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed November 12, 1946.*

A. L. YANTIS, for claimant.

GEORGE F. BARRETT, Attorney General; C. ARTHUR NEBEL, Assistant Attorney General, of counsel, for respondent.

DAMRON, J.

On August 22, 1945 claimant, Wade Hampton, received an accidental injury while engaged in his employment for the Division of Highways at or near Shelbyville, Illinois. He was employed by the Division on August 18, 1945 as a common laborer at a wage rate of 70c per hour. On August 22, 1945, he was one of a group employed in shoveling gravel from a railroad car at the Big Four Railroad unloading track in Shelbyville. About 4:55 P. M. this claimant, while climbing down the ladder built on the side of the railroad car, missed a step of the ladder, he started to fall, but held on to the ladder rungs with his hand. His weight and the force of the fall loosened his grip causing him to fall to the ground with

great force, dislocating his left shoulder and injuring his left arm.

Claimant was given first aid medical treatment at the Hulick Clinic, Shelbyville, Illinois and allowed to return to his home on the date of the accident. The nature of his injury was found to be dislocation of the left shoulder with the edema surrounding the tissues.

Doctor McHarry of the Clinic estimated the date of the disability to be about one month or longer in healing.

On December 11, 1945, a representative of the Division of Highways called upon the claimant and finding that claimant's shoulder movements were limited made the necessary arrangements for claimant to receive such treatments as would be prescribed by Doctor J. Albert Key, Professor of Clinical Orthopedics, Washington University, St. Louis, Missouri. On December 17, 1945, claimant was examined by Doctor Key who made arrangements for claimant to enter the Barnes Hospital on January 17, 1946 for a manipulation of the shoulder under anesthesia to break up adhesions which had formed following the injury. Upon being informed, the claimant declined to submit to this operation inasmuch as he had been advised that the operation, or manipulation under anesthesia would be very painful and that the net result thereafter would be problematical and could aggravate the condition of his left shoulder and arm.

Upon the hearing before the Commissioner, Doctor E. M. Montgomery, a witness for claimant, testified that in December 1945 he made a physical examination of the claimant and found limited motion in his left shoulder with atrophy of the deltoid muscle. That the patient had fair motion of the left arm, left to right, but was unable to raise the arm. That there was considerable weakness in the hand and forearm, due in the doctor's opinion, to

an injury of the nerve under the deltoid muscle. Sometime thereafter, Doctor Montgomery again examined the claimant, and at that time found that the deltoid muscle of the left shoulder had become smaller and more atrophied; that he advised claimant to continue the diathermy treatments which he had been receiving and to continue manipulation of the injured shoulder.

When questioned regarding the beneficial results, if any, of the proposed forced manipulation of the shoulder joint under anesthesia, he testified that considering the condition of the shoulder, as he found it in December 1945, and the fact that claimant was 71 years of age, such an operation was inadvisable. That such an operation, as proposed, might prove to be more injurious than beneficial. That more stiffening of the shoulder joint and greater loss of motion could develop as a result of more adhesions. This medical witness testified that claimant could raise his left arm only one-fourth of the distance that he normally should, as a result of the injuries, and that this condition was permanent.

On cross-examination he testified that there was some ankylosis present in claimant's left shoulder joint caused by the adhesions from the periosteum. That the X-ray films introduced in the evidence as claimant's exhibits 1 and 2, showed no arthritic deposits present.

In *Florczak* vs. *Indus. Com.*, 381 Ill. 120, the Court having before it a question concerning the refusal of an injured employee to submit to a major operation tendered to him by the employer and the effect the refusal would have upon his compensation payments, said "A majority of the Courts of review in other jurisdictions have adopted the rule that where the operation tendered is of a major character and attended with a serious risk to the member, an injured employee's refusal to submit

thereto is not unreasonable, and compensation should not be denied on that account. This rule is supported by the better reasoning and is in accord with what this Court has declared the purpose of the Workmen's Compensation Act to be and the remedies the legislature intended to cover.''

There is no medical evidence in this record which convinces us that the refused operation would have been beneficial to claimant or would have restored the functional loss of use of claimant's left arm.

From a consideration of this record, the Court finds that the claimant and respondent were on the 22nd day of August 1945, operating under the provisions of the Workmen's Compensation Act; that on the last mentioned date claimant received accidental injuries which arose out of and in the course of the employment; that notice of said accident was given to said respondent and claim for compensation on account thereof was made on said respondent within the time required under the provisions of said Act; that earnings of employees in the same classification of this claimant for the year next preceding the injury were $1,120.00, and that the average weekly wage was $21.53. That the claimant at the time of the injury had no children under 16 years of age. That necessary first aid, medical and hospital services were provided by the respondent herein.

The record discloses that this claimant was unable to perform work from the date of the injury, August 22, 1945, to the 2nd day of May 1946, totaling 36 weeks, for which he is entitled to be paid at his compensation rate of $12.92. This amounts to the sum of $465.12. The record further discloses that the respondent, through the Division of Highways, paid to this claimant the sum of $169.82 as temporary total disability which must be de-

ducted from the above amount leaving a balance due claimant for temporary total disability the sum of $295.30, payable in a lump sum forthwith. ·

Claimant is entitled to have and receive from the respondent the sum of $12.92 per week for a period of 112½ weeks, or the sum of $1,453.50, as provided in Section 8, Paragraph e of said Act, as amended, for the reason that the injury sustained caused a 50% permanent loss of use of the left arm of the claimant.

Of this amount the sum of $358.07 has accrued and is payable in a lump sum forthwith. The remainder amounting to the sum of $1,095.43 is payable to claimant at a weekly compensation rate of $12.92 beginning November 19, 1946, with one final payment of $10.15.

An award is hereby entered in favor of claimant, Wade Hampton, in the sum of $1,748.80, payable as above indicated.

This award is subject to the approval of the Governor as provided in Section 3 of "An Act concerning the payment of compensation awards to State employees."