Hillsborough,
No. 4785.

RAYMOND E. CATE

*v.*

PERKINS MACHINE CO. & a.

Argued December 1, 1959.

Decided January 27, 1960.

392

*Upton, Sanders & Upton* (*Mr. Frederic K. Upton* orally), for the plaintiff.

*Booth, Wadleigh, Langdell, Starr & Peters* and *Charles J. Dunn* (*Mr. Dunn* orally), for the defendants.

LAMPRON, J. The findings and rulings to which the plaintiff excepted are the following:

"Mr. Cate's refusal to have an operation raises the question as

to whether such refusal affects his right to recover compensation. A man must act reasonably to overcome his disability; he is not entitled to recover compensation for disability avoidable by an operation which ordinary prudence advises; if he is not to be subjected to unusual risk and danger by the operation, it is his duty to submit, if it fairly appears that the results of the operation will be a substantial physical gain . . . .

"Mr. Cate is apprehensive of what will happen to him if he is operated on.

"It is found that the operation would not involve any unusual risk or danger for Mr. Cate, that it fairly appears that the result of the operation will be a substantial physical gain, and that ordinary prudence advises and reasonable action requires the operation.

"Raymond Cate is not entitled to recover compensation for his disability in so far as it would be alleviated by the operation."

The basis of plaintiff's exceptions is that the tests or standards used by the Trial Court to determine whether his refusal to undergo the proposed operation was justifiable were erroneous.

The Trial Court granted plaintiff's request No. 5 that "The plaintiff's prior experience with medical doctors and surgeons is a relevant and material factor in the determination of whether his refusal to undergo the operation is reasonable." However it is evident that the standard applied to plaintiff's conduct by the Court was that "if he is not to be subjected to unusual risk and danger by the operation, it is his *duty* (emphasis supplied) to submit, if it fairly appears that the results of the operation will be a substantial physical gain."

"The question when compensation should be suspended because claimant refuses to submit to . . . surgery is one of the most delicate medico-legal issues in the entire realm of workmen's compensation." 1 Larson, Workmen's Compensation, s. 13:22, *p.* 189. The surgeon who sees and performs many operations and who testifies that the chance of failure of improvement is only twenty per cent naturally has a different point of view than the claimant who has never had a major operation. *Id.,* 191. Moreover what is reasonable in the case of a particular claimant cannot always be determined by the conclusion that a doctor or a trier of facts would have reached in respect to himself if he were in the same condition. See 11 Negl. and Comp. Cases Anno. (N. S.) *pp.* 476-529.

Our Workmen's Compensation Law (RSA ch. 281) is silent as to whether an injured employee shall or shall not submit to a surgical operation. Its silence in this matter is a strong indication that the Legislature did not intend to impose on the employees a mandate to submit their bodies to a major operation attended with serious risks or else suffer a loss of compensation payments. *Mancini* v. *Superior Court,* 78 R. I. 373. Moreover "at least as early as 1921 this court has given a liberal interpretation to the provisions of the Workmen's Compensation Law whenever possible . . . and has stated that it would continue to do so." *Prassas* v. *Company,* 100 N. H. 209, 211.

In the absence of a provision in the statute (RSA ch. 281) requiring that an employee submit to an operation and in view of our policy of giving the Law a liberal interpretation, the test in a case like this one should be the following: was the employee's conduct in refusing to submit to the operation so arbitrary and unreasonable that the continued disability could be said to have resulted from his own misconduct. *Gidley* v. *Industrial Commission,* 355 Ill. 586; *Evans* v. *Stearns-Rogers Manufacturing Co.,* 253 F. 2d 383 (10th Cir. 1958). If the answer is in the negative "the chargeable disability is only that resulting from accident incurred in employment, and not that caused by the workman's carelessness preventing or delaying recovery from the accident." *Neault* v. *Company,* 86 N. H. 231, 232; *Hickey* v. *Brown Company,* 94 N. H. 21. See *Perreault* v. *Company,* 87 N. H. 306, 312.

Although the determination of that issue is generally a question of fact "instances may occur when all the evidence is so clear that the decision presents merely a question of law. *Snook's Case,* 264 Mass. 92." *Neault* v. *Company, supra,* 234.

There was uncontradicted evidence of the following unfortunate experiences encountered previously by the plaintiff. A doctor who attended him as a baby injected a strong solution into his eye which burned out the white part and left the middle hanging out. He lived with his eye in this condition for sixteen years when the dead matter was excised and an artificial eye inserted. Later in life he underwent a tonsillectomy. The operation was unsuccessful. The attending physician later told him he could not finish the operation because he feared the plaintiff would bleed to death. On October 5, 1955 a myelogram was attempted on his spinal column in the diagnosis of his present injury. Because of technical difficulties it was unsuccessful. This test, which is

usually performed in a half hour and without pain, lasted an hour and a half, was a painful experience and left plaintiff's back stiff and sore. The Trial Court found that plaintiff was apprehensive of what will happen to him if he is operated upon.

Plaintiff's physician, admitted to be a qualified orthopedic surgeon, testified that the proposed operation on plaintiff's back, a laminectomy and spinal fusion, involves danger to life. "It is really accepted as a very major operation . . . The complications which might arise are paralysis, infection, shock — irrevocable shock — shock from which the man just does not recover . . . It goes without saying that there is no given guarantee that the patient will be one bit better when we get through than when we started, and there is a possibility that they may be worse."

This doctor testified further that plaintiff's refusal to be operated on was not unreasonable "when you take into consideration the man's previous experience, plus the fact we know that it required two myelograms to arrive at an answer on him." He further stated that the patient's attitude is of tremendous importance in a case of this type and for that reason even if the plaintiff could be prevailed upon to submit to the type of surgery recommended he would not perform the operation. He also testified that "with the mental attitude that this man has, the probability of any success is very remote."

An orthopedic surgeon, who examined the plaintiff and testified for the defendants, stated that in his experience one out of five cases is not improved by the prescribed laminectomy. He also stated that in the part of the body to be operated on "there are a lot of blood vessels in there, and there is always some bleeding." He further testified that experiences such as plaintiff said he encountered "have a powerful effect upon anybody in deciding whether or not to undergo surgery." He also testified that the patient's attitude is an important factor to consider when a patient is to undergo major surgery and that it makes quite a lot of difference in the recovery and the convalescence.

On that evidence we rule as a matter of law that plaintiff's refusal to submit to the operation cannot be found to be so arbitrary and unreasonable that his continued disability could be said to have resulted from his own misconduct. *Cf. Hickey* v. *Brown Company, supra;* see *Charbonneau* v. *MacRury,* 84 N. H. 501, 509. The compensation to which he is entitled therefore should be computed on his present disability without regard to the probable

effect of an operation. *Florczak* v. *Industrial Commission*, 381 Ill. 120; *Evans* v. *Stearns-Rogers Manufacturing Co., supra;* annos. 73 A. L. R. 1303, 1307; 105 A. L. R. 1470, 1476.

In view of the result reached it is unnecessary to consider defendants' exceptions.

*Remanded.*

BLANDIN, J., dissented; the others concurred.

BLANDIN, J., *dissenting:* The case of *Neault* v. *Company*, 86 N. H. 231, decided in 1933, makes clear that under our Workmen's Compensation Law (RSA ch. 281), the New Hampshire rule is unlike that in some other jurisdictions upon which the majority opinion relies. In the *Neault* case, the court speaks as follows: "The principle that if it is reasonable to submit to an operation, the consequences of a refusal are not a part of the disability for which compensation is to be given, is generally recognized. It is stated in various forms of expression. Often distinctions between minor and major operations, the matter of amputations, and the chances or assurance of success of the operation *are treated as legal propositions in their bearing on the reasonableness of incurring the operation, where here they are items of fact for the trier to take into account."* (Emphasis supplied). *Id.,* 233.

The court also says that the test is the simple one which has always been applied to the effect that "Reasonable conduct being that ordinarily exercised by men in general, all persons who are hurt are expected to take proper care of themselves." *Id.,* 231. It holds that "The usual rule of distinctions between law and fact is to be employed," and says that "If the claimant is not to be subjected to unusual risk and danger arising from the anesthetic to be employed or from the nature of the proposed operation, it is the claimant's duty to submit, if it fairly appears that the result of such operation will be a substantial physical gain." *Id.,* 234. In the present case, the Court found all essential facts against the plaintiff, faithfully following the above rule, even to the extent of using its precise wording.

The *Neault* opinion makes it plain that the test adopted in the majority opinion, "was the employee's conduct in refusing to submit to an operation so arbitrary and unreasonable that the continued disability could be said to have resulted from his own misconduct,"

is not in accord with our law. Furthermore, this test in effect shifts the burden of proof from the plaintiff to the defendant. Unless changed by the Legislature, as in the matter of contributory negligence in tort cases (RSA 507:8) the burden remains on the plaintiff to satisfy the trier that his conduct is reasonable. The direction that the Law be construed liberally is not an authorization to rewrite it. *Bodeau* v. *Bodeau*, 92 N. H. 183, 184.

The Workmen's Compensation Law, since the *Neault* decision nearly thirty years ago, has been re-enacted without relevant change, and that decision is therefore binding on this court. As was unequivocally stated in *Bilodeau* v. *Insurance Co.*, 84 N. H. 405, the court must follow the principle "that the reenactment of a statute without change adopts its prior judicial interpretation, a rule announced as early as 1816 in *Tomson* v. *Ward*, 1 N. H. 9, and since followed consistently . . . . " *Id.*, 407. See also, *Hackett* v. *Railroad*, 95 N. H. 45. In fact, we have approved the *Neault* holding as recently as in *Morono* v. *Cody*, 99 N. H. 479, 482.

The cases of *Gidley* v. *Industrial Commission*, 355 Ill. 586; *Evans* v. *Stearns-Rogers Manufacturing Co.*, 253 F. 2d 383 (10th Cir. 1958); and *Mancini* v. *Superior Court*, 78 R. I. 373, relied upon in the majority opinion, are not authority for it here. In *Gidley*, not only were the findings diametrically opposed to those in our case, but the Illinois rule differs radically from ours in that it holds: "In such a case it is proper to resolve *all doubts* in favor of the employee." *Id.*, 593 (Emphasis supplied).

In the *Evans* case, the court applies the rule that the distinctions between minor and major operation and the chances of success are to be treated as legal propositions in their bearing on the reasonableness of incurring the operation. This is directly contrary to the *Neault* case, which holds that these circumstances are items of fact for the trier to take into account.

In *Mancini* v. *Superior Court*, the opinion says that no workman need submit "to a surgical operation of any extent or degree in order to retain the benefits of the act," (*Ib.*, 382) and furthermore there was no finding in that case that the operation was not dangerous to life or limb or that it was reasonably calculated to help the plaintiff. Again, the implication in the proposed opinion, relying on *Mancini*, that silence in RSA ch. 281 on the question of whether the injured workman shall or shall not submit to an operation, is a strong indication that the Legislature did not intend to impose on the employees a mandate to so submit or else suffer

a loss of compensation payments, is not only unsupported in our law, but is directly refuted by the *Neault* case. This opinion holds that our Law does require that the workman, to retain the full benefits of compensation, must act reasonably even to the extent of undergoing an operation.

Another difficulty which I have with the majority opinion is that the Court made a finding of fact which was unexcepted to by the plaintiff at the trial and which raises an issue neither briefed nor argued before us, namely, the Court found that on October 20, 1955 and again in October, 1957, the plaintiff's own doctor recommended the operation. It is also undisputed upon the record that the only other physician to testify was of the opinion from December 2, 1955, when he first examined the plaintiff, up to and including the time of trial, that an operation was advisable. It thus appears that from the time of the injury until after October, 1957, there was no medical evidence whatsoever to support his refusal to be operated upon. I am unable to perceive how, under any theory, his conduct during that time could be found reasonable. Yet the majority opinion ignores this point altogether.

In conclusion, it appears that the *Neault* case laid down the rule for this jurisdiction. Although it has had repeated opportunities to change it, the Legislature has not seen fit to do so. Under all our established law, we are therefore bound by the construction placed upon this statute by our court in the *Neault* case. *Bilodeau* v. *Insurance Co., supra,* 84 N. H. 405, 407. As we recently observed in *Prassas* v. *Company,* 100 N. H. 209, 211, however appealing the arguments for reaching a different conclusion, "the stark fact remains that the remedy for this situation is legislative and not judicial."

It seems to me that in overruling the *Neault* decision, we are in effect putting into operation a different statute than the one enacted and approved by our Legislature. I am convinced that the preservation of the principle of the separation of powers, as enunciated in *Prassas,* is more important than reaching what may seem a desirable result in the present case. I would therefore deny the appeal and uphold the rulings and decree of the Trial Court.