Belknap,
No. 6213.

AMERICAN ASBESTOS TEXTILE CORP. *& a.*

*v.*

LIDIA R. RYDER.

July 29, 1971.

*Wadleigh, Starr, Peters, Dunn & Kohls (Mr. Theodore Wadleigh* orally) for the plaintiffs.

*Nighswander, Lord, Martin & KillKelley (Mr. David J. KillKelly* orally) for the defendant.

LAMPRON, J. Appeal under RSA 281:37 by the employer American Asbestos Textile Corp., and its insurer, American Mutual Liability Insurance Company, from a decision of the deputy labor commissioner, on June 30, 1969, awarding total disability payments to Lidia R. Ryder for an injury which she sustained on or about December 14, 1965 while employed by American Asbestos, hereinafter referred to as Asbestos.

Hearing before a Master (*E. Paul Kelly, Esq.*) who made cer-

tain findings and rulings, and recommended that a decree be entered that Mrs. Ryder is entitled to compensation for total disability from July 30, 1969 "until the time prescribed by RSA 281:23" at an agreed rate of $43.20 per week and that she is also entitled to payments for medical services. Workmen's compensation benefits were paid to her by Asbestos from December 15, 1965 until June 30, 1969. The master's report was approved by *Keller*, J., who entered a decree in accordance with its recommendations. The exceptions of Asbestos and of its insurer to the master's report and to the decree were reserved and transferred.

Mrs. Ryder was injured on or about December 14, 1965 while in the process of picking up a warp to place it in a loom as part of her work at Asbestos. She consulted her family physician, Dr. Cataldo, who described her condition as follows: "Primarily it was pain in the lower back, pain radiating down the left sacroiliac nerve, pain on standing for any period of time. In general, the predominant sympton . . . was pain as a result of . . . muscle spasm." He has been treating her ever since, seeing her twice a week for quite some time and about once a week thereafter. This treatment has consisted of injections to relieve pain, pills to relieve muscle spasm, diathermy, and the wearing of a brace. At the time of the hearing before the master, on January 5, 1969, Dr. Cataldo testified that her condition was "substantially the same. Well, possibly a little worse."

Mrs. Ryder has been examined by three orthopedic surgeons, Drs. Halfman, Gargar, and Russell, each of whom told her she had a ruptured intervertebral disc and talked to her about an operation. Asbestos and its insurer take the position that Mrs. Ryder arbitrarily and unreasonably failed to submit to a disc operation to alleviate her back problem and thus should be denied further benefits under the Workmen's Compensation Law. They maintain that her refusal was based only on unfounded fear and that there was no medical evidence introduced to show that she was reasonable in her conduct.

The parties are in agreement that the test to be applied is whether Mrs. Ryder's conduct was so arbitrary and unreasonable that her continued disability could be said to have resulted from her own misconduct. *Cate* v. *Perkins Machine Co.,* 102 N.H. 391, 394, 157 A.2d 778, 780 (1960). The master found that her conduct was not arbitrary and unreasonable. The master correctly

ruled that Mrs. Ryder had the burden of proving that her con-
tinuing disability is chargeable to the injury received in her acci-
dent and not to her own misconduct. *Knight Broadcasting Co.* v.
*Kane,* 109 N.H. 565, 258 A.2d 355 ( 1969 ). The master's find-
ings must be viewed in the light of the following well established
principles: that it is within the province of the trier of facts to re-
solve conflicts in the evidence, to draw reasonable inferences from
it, and, so doing, to arrive at different conclusions than those
urged by a particular party. *Great American Ind. Co.* v. *Roussell,*
103 N.H. 125, 130, 166 A.2d 866, 869 ( 1961 ); *Jackson* v.
*Emile J. Legere, Inc.,* 110 N.H. 252, 254, 265 A.2d 18, 20
( 1970 ). The master's conclusions, adopted by the court, must
stand unless they are so clearly erroneous that they could not
reasonably be made. *Walter* v. *Hagianis,* 97 N.H. 314, 316, 87
A.2d 154, 157 ( 1952 ).

Dr. Halfman, the only orthopedic surgeon who testified at the
hearing, saw Mrs. Ryder twice, December 24, 1965 and January
7, 1966. He testified that on the last visit he suggested an opera-
tion, " and I have a note that the patient does not want it. So, I
suggested she go along with conservative therapy without opera-
tion. I did not see her again. She didn't contact me. " " I don't
convince anybody. If you talk somebody into an operation, they
never do well. They always have a complication. I leave it up to
the patient. " He also testified that the chances of recovery from a
laminectomy are best if the operation takes place within two to
four months after the injury. If you wait four years " you're
quite bad. " If the nerve " has been stressed there is a definite
permanent damage in the nerve. "

Mrs. Ryder testified in part as follows as to what Dr. Gargar
told her about an operation: " If you rest and take it easy . . .
just take your medication, take what the doctor order you, I
don't think it necessary you go through the operation that
time . . . If I continue work, I get more pain, and I'd have to
have operation. " Her testimony as to what Dr. Russell told her
about an operation was in part as follows: " ' You think you want
to go through the operation ' . . . I said ' you guarantee I be all
right?' He said ' No guarantee ' ". " I told him . . . ' I am ascared.
I get fear if I go under the operation': and he said to me . . .
' If you afraid, never go through the operation. ' "

Her family physician, Dr. Cataldo, testified in part as follows
on the subject of an operation: " From the very beginning that the
diagnosis was made Mrs. Ryder expresses a deep-seated fear of

the operation itself. She thought she would not live to come out of it. Being a woman, I can see that her attitude towards the operation plus its possibilities far outweighed any possible gain . . . beneficial gain in her condition . . . This is an extremely difficult area, and I don't believe . . . that I would consider that any specialist could ever say that merely taking a little piece . . . of the cartilage out is going to give this woman a new way of life or a life free from pain or a life free from anxiety." He also testified that in his opinion Mrs. Ryder's fear was "real genuine" and "the mental emotional effect of just the fear alone can make the difference between success and failure almost in any operation."

Dr. Cataldo further testified that Mrs. Ryder never asked him whether she should have an operation and that he never tried to talk to her about whether or not she should submit to an operation. "Her convictions and her fear was of such a positive nature that I didn't want to rile the coals. She's got a Latin temperament, menopause, feelings of her own. I wasn't going to press her. Other doctors, the surgeons, were the ones who are supposed to if they felt an operation was necessary. They are the ones that should have taken her into their office and told her exactly what the operation consisted of . . . But they never described the if's and's and but's, the pro's and con's if the operation was unsuccessful."

Mrs. Ryder, 53 years of age, was born in Italy and came to the United States in 1948. When inquiry was made why she never asked any of the doctors what the probable result would be if she had an operation, Mrs. Ryder answered "[n]o, sir. No, I know what it can be . . . What I am fear, I know my life. If I am going to be crippled and I am going to be crippled in a chair for life, I am no going to." She testified that her only exposure to operations of this kind was talk she heard "I heard a lot they say can be worse." "I not consider an operation because I am afraid. I am scared I am going to be crippled or I am going to get out of dead." A laminectomy can be considered a major operation attended with serious risks. *Cate* v. *Perkins Machine Co.*, 102 N.H. 391, 157 A.2d 778 (1960). The patient's attitude, such as fear, is an important factor to consider when a patient is to undergo major surgery and can make quite a difference in the recovery and convalescence. *Id.* at 395, 157 A.2d at 781.

The master made the following findings: "I find that the chances of success have been so substantially diminished, if surgery were

to be done four years after the accident, that Mrs. Ryder can reasonably refuse to submit to the operation.

"I further find that surgery was not genuinely or intelligently presented to her within a reasonable time after the accident of December 14, 1965, so that if there were any refusal to submit to surgery at that time, it cannot be deemed to be arbitrary and unreasonable. I find that the Company did not tender or make available an operation within a reasonable time after the accident. The Company did not take the position that her refusal to submit to surgery was arbitrary and unreasonable until May of 1969, three years and five months after the accident, when it decided to file its Petition to terminate benefits and payments. The discussions with Dr. Halfman and Dr. Russell recommended conservative treatment and surgery as the second alternative. There was no real discussion with Mrs. Ryder about the mechanics and procedure of the operation and the possibilities of improvement because of the surgery. I further find that if she had in fact refused to submit to surgery within a reasonable time after the accident, that her conduct was not arbitrary or unreasonable, because of the genuine fear and anxiety that she has towards the operation."

The evidence supported the hereinabove findings of the master that Mrs. Ryder's conduct in not submitting to an operation for her injury was not arbitrary or unreasonable and also warranted the decree that she had a compensable total disability. RSA 281: 23. The above findings pertaining to the conduct of Asbestos and its insurer in regard to the operation were proper circumstances to be considered by the master in judging Mrs. Ryder's conduct. *Merrimack Sheet Metal Co.* v. *Martin*, 110 N.H. 84, 86, 260 A.2d 460, 461 ( 1970 ). It is unnecessary, however, to decide the issue of whether under RSA ch. 281 the employer must make a definite tender of an operation in order to claim that surgery has been unreasonably and arbitrarily refused. *See Merrimack Sheet Metal Co.* v. *Martin supra*; 1 Larson, Workmen's Compensation Law *s.* 13.22, at 192.97 ( 1968 ). Nor would it serve a useful purpose to detail the evidence which warranted the findings of the master excepted to by Asbestos. Suffice it to say that after an examination of the record we cannot say that they could not reasonably be made. *Walter* v. *Hagianis*, 97 N.H. 314, 316, 87 A.2d 154, 157 ( 1952 ).

*Decree affirmed.*

All concurred.