(No. 39242.—

ROCKFORD CLUTCH DIVISION, BORG-WARNER CORPORATION, Appellant, *vs.* THE INDUSTRIAL COMMISSION *et al.* —(WALTER ZABAWA, Appellee.)

*Opinion filed March 24, 1966.*

SOLFISBURG, J., and KLINGBIEL, C.J., specially concurring.

RENO, ZAHM, FOLGATE & SKOLROOD, of Rockford, (RALPH S. ZAHM and H. EMMETT FOLGATE, of counsel,) for appellant.

RUSSELL J. GOLDMAN and ROALD A. JACOBSEN, both of Rockford, (RUSSELL J. GOLDMAN, of counsel,) for appellee.

Mr. JUSTICE SCHAEFER delivered the opinion of the court:

This is an appeal by the employer from a judgment of the circuit court of Winnebago County which affirmed the Industrial Commission's award of total and permanent disability compensation to the claimant, Walter Zabawa.

On February 14, 1961 the claimant suffered an injury when a stack of round iron plates on which he was working fell over on him. His back was injured as he attempted to hold them up. The record shows that for some time prior to his injury the claimant suffered from what is described in the record as "a cardiac condition," and because of that

condition had been assigned to light work. The company doctor took X rays of Zabawa, prescribed a corset for his back, and told him to go to bed. After several weeks of examination and treatment, the doctor recommended that Zabawa undergo a laminectomy and possibly a spinal fusion to correct his disability. The employer offered to pay all medical and surgical costs of the operation, but Zabawa refused.

In the fall of 1961, the doctor advised both the employer and Zabawa that he could go back to work if he was assigned light duties. On January 8, 1962, Zabawa appeared for work, but shortly after arriving he announced that he was not going to work and he left. He has never returned to work since the day he sustained his injuries.

On January 9, 1962, Zabawa filed an application for adjustment of claim with the Industrial commission. The arbitrator made an award based on total permanent disability in November 1962, and the commission confirmed the award on June 5, 1963. The circuit court of Winnebago County set the award aside on February 14, 1964, and remanded the case to the commission with instructions to consider and receive evidence on certain questions of fact.

It is undisputed that the doctor to whom the employer referred the claimant found that an operation on his back was necessary. The claimant's witness, Dr. Parker C. Hardin, testified that claimant suffers from a ruptured lumbar and lumbosacro spine intervertebral disc and that he has small bilateral, indirect inguinal herniae which also resulted from the injury. Dr. Hardin testified that the standard treatment for the claimant's back condition is a laminectomy and, if necessary, a spinal fusion. He also testified that there was no guaranty that surgery would improve the condition but that in his experience 80 to 95 per cent of those who undergo disc surgery are sufficiently improved that they are very pleased they had the operation. Three to five per cent are not improved or are made worse

by the operation. He testified that a laminectomy is a serious major operation, that he had never heard of anyone dying from the operation, but that this man had a heart condition which would increase the risk. He did not examine the claimant's heart because he did not consider himself a cardiologist or a person qualified to express an opinion about the heart.

On review before the commission, the employer offered in evidence two letters signed by Dr. R. Gregory Green, which stated that he had examined the claimant in March, April, and May of 1961. The first letter stated that when the patient was re-examined on April 17, 1961, his left achilles tendon reflex was still absent. "It was felt that the patient's condition was becoming worse and it was decided to refer the patient to Dr. Courtney Hamlin, specialist in internal medicine, for a complete cardiac evaluation to see if the patient would be able to tolerate surgery. For that reason I authorized Dr. Hamlin to carry out this examination at company expense. I am sure you are aware that this patient was treated for several months by Dr. Hamlin for a cardiac condition." The second letter stated that shortly after May 2, "we received a letter dated April 25, 1961, from Dr. Hamlin in which he stated that he thought that the patient could tolerate surgery if necessary."

The order of the circuit judge who heard the case upon review remanded it to the commission "for the purpose of receiving evidence upon and considering the following questions:

(a) Is petitioner presently suffering from the effects of an injury to his back arising out of and in the course of his employment?

(b) Are the effects of such injury, if any, sufficient to bring about a condition of total permanent disability?

(c) May petitioner's condition of ill-being be reasonably expected to be substantially improved and the

nature and extent of his disability be reasonably expected to be substantially lessened by a surgical procedure commonly known as a laminectomy and spinal fusion?

(d) Is petitioner physically able to undergo surgery of the type reasonably required and ordinarily contemplated for the purpose of improving and, perhaps, overcoming the physical limitations and disabilities of which petitioner now complains?

(e) Having due regard for petitioner's alleged cardiac involvement, should he be required to submit to an operation of the type and kind ordinarily calculated to improve the impairments of which petitioner complains?

(f) Is it reasonably possible to lessen petitioner's existing disability by the performance of an operation through the use of local anesthetic if, from the testimony of medical experts, it appears that petitioner is not able to undergo the application of a general anesthetic?

(g) Is petitioner, a man 42 years of age at the time he apparently injured his back, to be medically and surgically considered to hereafter be totally 'and permanently disabled by reason and as a result of the occurrence of February 14, 1961, as described in the testimony in this case?

(h) What is actually and really the cause of petitioner's existing condition of ill-being?

(i) Is petitioner's heart condition sufficient to render him totally and permanently disabled, without regard for the occurrence of February 14, 1961?"

The remanding order further directed "that the petitioner shall be examined by qualified and disinterested medical and surgical experts selected and designated by the Industrial Commission of Illinois, whose reports and recommendations shall be received and considered in support of

such further orders and decisions as may be hereafter entered in this case."

After the case had been remanded to the commission, Dr. Hardin, claimant's witness, testified that a laminectomy is a "serious, large, important major operation" which may involve quite a prolonged procedure. There is danger of injury to the aorta. He testified that in his experience 85 per cent of the people who undergo an operation for the condition from which the claimant suffered are improved. The employer offered a letter from Dr. Eugene E. Herzberger. This letter stated that the patient had been referred to Dr. George Barry who "did not find any evidence of organic heart disease." The letter continued: "In view of the obvious disability of the patient and the persistence of symptoms and signs, it is felt that the patient should be operated upon and the herniated intervertebral disc removed. However, prior to the operation a myelographic study should be carried out, for precise visualization of the level of the herniation of the nucleus pulposus. As the patient's heart condition does not appear to represent any contrary indication, it is felt that it would be advisable to subject the patient to surgery as soon as possible. As most of our operations of this kind are carried out under local anesthesia and as the patients invariably walk on the day of the operation following such a procedure, there is no reason to consider the surgical procedure in any way particularly worrisome in the light of the patient's general condition. The patient has been advised as to these facts and will have to make his own decision on the matter. If this patient is not treated surgically, it is very likely that he is going to remain with considerable permanent disability, which of course could be avoided with proper surgery."

At the hearing pursuant to the remanding order the Commission refused to appoint medical and surgical experts and the only testimony presented was that of Dr. Hardin, previously referred to, and the letter from Dr. Herzberger.

The commission again made an award to the claimant finding that he was rendered wholly and permanently incapable of work as a result of injuries sustained in the course of his employment. The circuit court of Winnebago County affirmed this award and the employer has prosecuted this appeal.

The employer contends that the commission committed reversible error in failing to comply with the order of the circuit court. Questions (h) and (i) submitted to the commission by the trial judge injected new issues into the case which had not been raised by the employer and which were not pursued by the employer upon remand. The answers to questions (a), (b), and (g) were implicit in the commission's finding of permanent total disability, and the circuit court's ultimate affirmance of the commission's award indicates that the court was satisfied with the evidence supporting the commission's finding. The remaining four questions concerned the desirability of a laminectomy. Again the circuit court's affirmance of the commission demonstrates its agreement with the conclusion that the claimant's refusal to undergo surgery was reasonable. We do not believe that the judgment of the circuit court affirming the award of the Commission should be reversed because the Commission failed to comply with this portion of the order.

The employer urges the applicability of section 19(d) of the Workmen's Compensation Act, (Ill. Rev. Stat. 1963, chap. 48, par. 138.19(d),) which provides that if an injured employee refuses "to submit to such medical, surgical, or hospital treatment as is reasonably essential to promote his recovery, the Commission may, in its discretion, reduce or suspend the compensation of any such injured employee."

Under our decisions, however, in the absence of bad faith, it is for the claimant to choose whether to continue to suffer from a disability or to submit to a major operation designed to cure it. What was said in *Gidley* v. *Industrial*

*Com.* 355 Ill. 586, 595, is pertinent here: "In the case before us neither the Industrial Commission nor this court would be justified in saying that the conduct of the defendant in error was such as to deprive him of his compensation. While an operation might have cured his knee, it might also have made it much worse through giving him a permanently stiff and immovable joint in place of one which was only partially and from time to time immovable. There is no showing of bad faith, * * *." In *Florczak* v. *Industrial Com.* 381 Ill. 120, 129, this court distinguished prior cases in which the claimant had refused minor surgery: "A majority of the courts of review in other jurisdictions have adopted the rule that where the operation tendered is of a major character and attended with serious risk to life or member, an injured employee's refusal to submit thereto is not unreasonable and compensation should not be denied on that account. * * * This rule is supported by the better reasoning and is in accord with what this court has declared the purpose of the Workmen's Compensation Act to be * * *."

The employer's attorney conceded in oral argument that he knew of no case in any jurisdiction in which compensation had been reduced or denied for failure to submit to a laminectomy. His difficulty may be explained by the fact that when an intervertebral disc operation is at issue, "most courts will not at present disturb a finding that refusal to submit to the operation is reasonable." (1 Larson, Law of Workmen's Compensation, sec. 13.22.) This treatise cites a number of cases in which, despite testimony that an operation on an injured disc would be beneficial, the operation was not required as a condition of compensation. *Ibid.* at n.67.

The Workmen's Compensation Act is not designed simply to protect employees who follow the best medical opinion of the day. It is designed for employees with divergent personalities, beliefs, and fears. If a claimant's re-

sponse to an offer of treatment is within the bounds of reason, his freedom of choice should be preserved even when an operation might mitigate the employer's damages.

Further testimony from independent medical experts would not, in our opinion, add anything significant to the record in this case. The claimant should be entitled to decide on the basis of whatever competent medical advice he chooses to follow whether he should submit to major surgery. The record contains ample evidence of the serious character of the proposed operation, and under the circumstances, no further evidence could render his refusal unreasonable. Although the Industrial Commission is under a duty to obey valid orders of the circuit court, in this case its failure to do so was harmless error.

The decision of the commission was not contrary to the manifest weight of the evidence and the judgment of the circuit court of Winnebago County is affirmed.

*Judgment affirmed.*

Mr. JUSTICE SOLFISBURG, specially concurring:

I agree with the result reached by this opinion but not with all that is said therein.

Irrespective of whether further testimony from independent medical experts would add anything significant to the record, it is the contention of *amicus curiae,* the Illinois State Federation of Labor and Congress of Industrial Organizations, AFL-CIO, that that portion of the circuit court's remandment order which directed that: "The petitioner shall be examined by qualified and disinterested medical and surgical experts selected and designated by the Industrial Commission of Illinois, whose reports and recommendations shall be received and considered in support of such further orders and decisions as may be hereafter entered in this case," is invalid. They state that it encroaches on the discretionary powers vested by statute in the Industrial Commission and is contrary to the holdings of this

court that the reviewing tribunal should not substitute its discretion for that of the administrative body. (*People ex rel. Miller* v. *Gill,* 389 Ill. 394.) The power to appoint impartial medical examiners is a discretionary one vested in the Industrial Commission pursuant to section 19(c) of the Workmen's Compensation Act. (Ill. Rev. Stat. 1963, chap. 48, par. 138.19(c).) Such an examination is not mandatory but it is provided that the Commission *may* require such an examination. As the record does not reveal any request for an impartial examination before the Industrial Commission, there could have been no abuse of discretion. Abuse of discretion will not be presumed and, of course, the burden of showing such abuse falls upon the party claiming it. (*Anthony* v. *Gilbrath,* 396 Ill. 125.) Section 19(f)(2) of the Workmen's Compensation Act provides in part as follows:

"The court may confirm or set aside the decision of the Commission. If the decision is set aside and the facts found in the proceedings before the Commission are sufficient, the court may enter such decision as is justified by law, or may remand the cause to the Commission for further proceedings and may state the questions requiring further hearing, and give such other instructions as may be proper."
Inasmuch as the question of impartial medical examination was not before the circuit court, it was improper for that court to remand with the directions for an impartial medical examination. Furthermore it is noted that the examination order compels the Commission to consider the reports and recommendations made by the medical examiner. As the order does not call for testimony, but only reports and recommendations to the Commission, the order would result in denying the parties their constitutional right to have witnesses appear and testify under oath and be subject to cross-examination. Rule 17—2 of this court (Ill. Rev. Stat. 1965, chap. 110, par. 101.17—2) which permits impartial medical examinations where they are deemed ap-

propriate by the trial court provides in substance that if the examining expert's findings are to be offered against any party, he is required to appear, testify under oath, and be subject to cross-examination. The parties constitutional rights are, therefore, protected under our rule but not under the order of the circuit court. Even rule 17—2 of this court does not permit a reviewing court to order an impartial medical examination in a trial court where no request pursuant to the rule was made in the trial court. For these reasons the circuit court had no right to enter that portion of the order which it did pertaining to impartial medical examination and the Commission was not bound to follow the directions of the circuit court under these circumstances.

Mr. CHIEF JUSTICE KLINGBIEL joins in this special concurrence.