(No. 44701.–

MARTIN YOUNG ENTERPRISES, INC., Appellant, v. THE INDUSTRIAL COMMISSION *et al.*–(Raul Zapata, Appellee.)

*Opinion filed March 30, 1972.*

SEBAT, SWANSON & BANKS, of Danville (ROBERT J. BANKS, JR., of counsel), for appellant.

MANION & DOYLE, of Hoopeston (PAUL T. MANION, of counsel), for appellee.

MR. JUSTICE DAVIS delivered the opinion of the court:

The employer, Martin Young Enterprises, Inc., has appealed from a judgment of the circuit court of Vermilion County which affirmed the Industrial Commission's award granting Raul Zapata, its employee and the petitioner herein, permanent total disability, to be followed by a pension. The arbitrator had awarded 64 weeks total temporary incapacity, as well as 35% for permanent loss of use of the left leg and 25% for loss of the use of the right.

The employer contends that there was no evidence of the petitioner's permanent disability other than subjective complaints; that the Commission's award was against the manifest weight of the evidence and therefore the arbitrator's decision should be accepted as binding; that no causal relationship was proved between the injury and alleged disability; that the employee refused to submit to necessary surgical treatment; and that testimony before the arbitrator "going to the ultimate issue" was inadmissible.

On December 5, 1966, the petitioner was employed as a laborer in the junkyard operated by the employer and was lifting a barrel onto a truck when he felt a sudden pain in his left side, which ran into his back. He complained forthwith to his employer and was sent to Dr. Fliesser for an examination. The doctor found no major abnormality, and treated the petitioner with medication and physiotherapy every third day, until December 23, 1966, when the treatment was terminated. Although the petitioner

experienced pain and weakness, the doctor advised him to return to work, which he did; however, he did lighter work because he tired quickly.

On March 27, 1967, he returned to Dr. Fliesser's office and complained of numbness in his left leg, which had developed after lifting a heavy bell on March 13. A myelogram, which was then given him, was interpreted as normal. On April 3, he informed Dr. Fliesser that he was much improved and was experiencing only minimal back-ache; however, later that day, he reported to Dr. Fliesser that he had a severe backache and couldn't work. He was then referred to Dr. Rumer in Champaign for consultation.

Dr. Rumer believed there was a herniation of the lumbar disc between L-5 and S-1, and performed a laminectomy with the removal of the herniated disc. After the operation, the petitioner continued to complain of severe pain in his back and in both legs so that it was impossible for him to work. When Dr. Rumer last saw him on October 20, 1967, he complained of having a very stiff back when first arising in the morning, and that, with his knees extended, he could only get his fingertips to within 14 inches of the floor.

The petitioner returned to work in June of 1967 and continued to work intermittently until November. He lost about 58 days of work during this period and continued to experience pain and numbness in his left leg from the back down to his foot.

On December 12, 1967, while still having pain, he consulted Dr. Petersen, who fitted him with a back brace, prescribed physical therapy, and thereafter saw him monthly. This treatment was continued until August 5, 1968, when Dr. Petersen applied a cast, which was removed August 30, 1968. The petitioner could not tolerate work and Dr. Petersen therefore performed a surgical fusion of the sacroiliac joint at L-4-5 and of the previously treated joint at L-5 and S-1. The petitioner was advised to return to work on April 1, 1969, but was told

to wear a brace. At that time, X rays showed that the fusion was apparently solid. The petitioner worked two days and returned to Dr. Petersen. He then complained of discomfort in the left flank and that his left testicle was shrinking in size. Dr. Petersen found that he had a range of back motion of 90 degrees flexion on April 10 and again on May 15, 1969.

On August 28, 1969, the petitioner was again examined by Dr. Petersen, who found that his range of back motion was excellent; that his straight leg raising was 80 degrees on the left and 90 degrees on the right; and that his spinal fusion was excellent. The doctor also noticed a one-half inch discrepancy in leg lengths due to a congenital condition.

In attempting to explain objectively the continuing complaints of the petitioner, Dr. Petersen stated that there were Kodt hooks remaining in the petitioner's back which had been used to hold the fusion together. However, the doctor asserted that it was highly unlikely that they were the cause of the petitioner's symptoms; that it was only "vaguely or remotely possible" that the removal of these hooks might relieve his complaints; and that the hooks had no ill effect upon his condition. He added that "no particular relief" could be promised the petitioner by the removal of the hooks.

On September 8, 1969, Dr. Mussey made an examination of the petitioner and his findings generally concurred with those of Dr. Petersen with respect to the petitioner's limitations. He testified that there was a possible pseudo-arthrosis, or nonfusion, causing the petitioner's pain, and that if this could be demonstrated by exploratory surgery, a refusion could be done and the Kodt hooks removed. However, he cautioned that the existence of a nonfusion was uncertain from the X rays, and that only exploratory surgery could determine it.

At the original hearing in December of 1969, and at the hearing on review on July 15, 1970, the petitioner

testified that he had pain constantly, whether walking or resting; that it was necessary for his wife to help him dress; that he could sit only 10 to 15 minutes and could walk only 20 minutes at a time. He stated that he was comfortable only when using a cane and his brace, and that he was unwilling to undergo another operation because neither leg felt better after either prior operation.

In September of 1969, the petitioner consulted with the State vocational rehabilitation counselor and attended a few classes at Danville Junior College in an attempt to train for shoe-repair work, but quit before completing the course. The petitioner conceded that he had made no attempt to find other employment since May, 1969. When the vocation rehabilitation counselor was asked at the hearing whether the petitioner was employable, he answered over objection that he was not. No physician testified, however, that the petitioner was totally disabled from any employment whatsoever.

The employer's argument that there was no evidence tending to show permanent disability begs the question. Section 8(b)(7) of the Workmen's Compensation Act (Ill.Rev.Stat. 1965, ch. 48, par. 138.8(b)(7)) provides: "All compensation payments named and provided for in paragraphs (b), (c), (d), (e) and (f) of this Section, shall mean and be defined to be for accidental injuries and only such accidental injuries as are proven by competent evidence, of which there are or have been objective conditions or symptoms proven, not within the physical or mental control of the injured employee himself." It was the injury which had to be proved by competent evidence, including objective conditions or symptoms. The Act does not require an objective finding of disability or of the effect of the injury upon the employee. Such finding can only be a conclusion based upon a proper evaluation of objective conditions or symptoms. *Electro-Motive Div., General Motors Corp. v. Industrial Com., 32 Ill.2d 35, 39.*

There was ample objective proof of the petitioner's

injury and condition. The testimony and reports of the physicians revealed objective symptoms and findings in the lateral bending tests, the existence of paresthesia in the left foot and limitation of motion in the sacroiliac joints; the report of the myelogram administered by Dr. Rumer showed a defect of the first sacral nerve root, and the operative record showed a definite protrusion of the L-5 and S-1 disc and adhesions of the nerve root.

The effect, or consequence, of the injury upon the employee—in this case total incapacity to do work of any kind—was a conclusion to be drawn from all of the evidence introduced on the petitioner's behalf.

In addition to the petitioner's medical testimony, other evidence introduced at the hearing showed that he could not speak or write the English language, and that he could read and write only a little in Spanish—his native tongue. These handicaps, together with a good work record of doing only heavy manual labor, coupled with his injury, could well have convinced the Industrial Commission that the petitioner was totally unemployable.

In *Skokie Valley Asphalt v. Industrial Com., 45 Ill.2d 333,* which involved a factual situation similar to the case at bar, at page 335 we said: "This evidence of constant pain and inability to find employment is sufficient to sustain the finding of permanent total disability."

The employer further argues that the Commission's award was against the manifest weight of the evidence. This contention appears to be based solely on the Commission's increase of the arbitrator's award from partial to total disability, rather than upon an evaluation of the weight of the evidence itself. It is well settled, however, that the Industrial Commission may alter the award made by the arbitrator. In considering this precise question in *Meade v. Industrial Com., 48 Ill.2d 215,* at page 221 we stated: "The award of the arbitrator becomes final by its entry upon the records of the Commission if it is not contested. If it is contested before the Commission,

the jurisdiction of the Commission to review is original jurisdiction. Likewise, the Commission is not bound by any findings of the arbitrator regardless of whether it hears additional evidence or simply reviews the record. *(Rodriguez v. Industrial Com., 371 Ill. 590, 593.)"* The employer's argument in this respect is without merit.

The employer also contends that no causal relationship was proved between the injury and the petitioner's permanent disability. We disagree. A chain of events was revealed by the testimony which shows a prior state of good health and a good work record, an accident resulting in disability, the removal of a herniated disc and a subsequent spinal fusion, and other circumstantial evidence, all of which established a causal relationship between the accident and the employee's condition on the date of the hearing. With respect to a similar claim in *Union Starch & Refining Co. v. Industrial Com., 37 Ill.2d 139,* at page 144 we stated: "We know of no case requiring a doctor's testimony to establish causation and the extent of disability, especially where, as here, the record contains the company doctor's report and hospital records showing findings of the employee's personal physician which are consistent with the employee's testimony." This contention likewise is not well taken.

A further claim raised by the employer is that the petitioner refused to undergo surgery recommended by his physicians and, consequently, his compensation should be reduced or suspended as provided by statute. (Ill.Rev.Stat. 1965, ch. 48, par. 138.19(d).) We point out, however, that there was no medical testimony indicating that the surgery recommended was "reasonably essential to promote his recovery," but rather, that there was only a vague and remote possibility that it would give him relief. Furthermore, this court has never required petitioners under the Workmen's Compensation Act to undergo a laminectomy, or successive operations in the event one or more is unsuccessful. *(Rockford Clutch Div., Borg-Warner Corp. v.*

*Industrial Com., 34 Ill.2d 240, 246.)* We do not believe that the petitioner's refusal to submit to further surgery warranted the suspension of his compensation.

Finally, the employer argues that the vocational rehabilitation counselor should not have been permitted to testify concerning the question of the petitioner's employability, because the question went to the ultimate issue before the arbitrator. The rationale of *International Coal and Mining Co. v. Industrial Com., 293 Ill. 524,532,* cited by the employer, relative to the impropriety of expert testimony of the type here in question, has been diluted by our decision in *Clifford-Jacobs Forging Co. v. Industrial Com., 19 Ill.2d 236, 241-4,* and in addition there was sufficient other evidence to show that the petitioner was permanently disabled.

The Commission's findings are not against the manifest weight of the evidence, and the judgment of the circuit court of Vermilion County is affirmed.

*Judgment affirmed.*