(No. 51855

GOLDBLATT BROS., INC., Appellant, v. THE INDUS-
TRIAL COMMISSION *et al.* (Leo Wilcoski, Appellee).

*Opinion filed December 3, 1979.*

Bernard Rosencranz, of Chicago, for appellant.

Perz and McGuire, of Chicago (Frank M. Perz, Robert F. Ferbend, and James M. Ridge, of counsel), for appellee.

MR. JUSTICE UNDERWOOD delivered the opinion of the court:

This is a workmen's compensation case in which the employer, Goldblatt Bros., Inc. (Goldblatt), appeals the judgment of the circuit court of Cook County confirming an award by the Industrial Commission to Leo Wilcoski of 306 weeks temporary total disability and thereafter a pension for life based on a finding of permanent total disability. Goldblatt urges that the finding of permanent total disability is against the manifest weight of the evidence and that any disability suffered by Wilcoski beyond losing the use of one leg is attributable to his refusal to have the leg amputated rather than to the accident which produced the injury.

On November 3, 1971, while claimant was acting in the course of his employment with Goldblatt, the jeep he was driving overturned and crushed the lower part of his left leg. Wilcoski was taken to the Franklin Boulevard Hospital, where the treating doctor noted that he had, among other injuries, a fracture of the femur and compound fractures of the lower tibia and fibula. The doctor questioned the viability of the foot but operated,

fusing the ankle, repairing the tendons, and inserting a Steinmann pin in the femur. Claimant remained in the hospital for 109 days and thereafter was treated as an outpatient at the hospital and subsequently at the Kildare Clinic until October 1974.

At a hearing before an arbitrator of the Industrial Commission in the summer of 1973 claimant testified that the leg caused him pain and kept him awake at night and that in May 1972 he had developed an ulcerating wound on the ankle which continued to drain at the time of the hearing. He also submitted the report of a medical examination by Dr. Robert C. Busch in February 1972. The report noted that claimant limped, that he had lost almost all mobility in the ankle, that the mobility of his left knee and thigh was impaired, that the left leg was one inch shorter than the right, that he had osteomyelitis in the ankle, that he suffered marked discomfort in the leg, that he required further treatment, and that he was completely unable to return to work.

The employer submitted two medical reports. The first, resulting from an examination by Dr. Ellsworth Tannehill in January 1973, confirmed the diagnosis of Dr. Busch, but concluded that claimant's problems would be solved by a below-the-knee amputation. Goldblatt's second medical report, resulting from an examination by Dr. John J. Dwyer in June 1973, also confirmed Dr. Busch's diagnosis, and concluded that the condition of the leg might justify amputation in the future but that an attempt should be made to save the leg. Dr. Dwyer also stated that a standard below-the-knee amputation would have claimant walking on a prosthesis within eight weeks.

At the hearing the arbitrator expressed an interest in finding employment for claimant, and counsel for Goldblatt implied that Goldblatt would consider employing claimant in a clerical capacity or in any other capacity for which he was suited. The arbitrator then awarded Wilcoski temporary total disability from the date of the injury and

indicated that the case would remain open for future modification.

Claimant sought review by the Commission, and a hearing was held in June 1975. He testified at the hearing that Goldblatt had refused to employ him and that he had not applied for work anywhere else. He further testified that the leg caused him constant pain, that it still drained on the ankle, that it throbbed and swelled with changes in the weather, and that he was tired after 15 minutes walking. Since his discharge from the Kildare Clinic in October 1974, he had treated the leg himself by bathing it and applying medication. He also submitted the report of an examination by Dr. Busch in August 1974 which reaffirmed the doctor's earlier findings and stated that claimant suffered from residual complaints and disability. Goldblatt submitted the report of an examination by Dr. Carlo Scuderi in December 1974. The report confirmed Dr. Busch's diagnosis and went on to speculate that additional surgery to change the position of the foot might be appropriate at some time in the future but did not advise an operation at that time because the extensive scarring on the foot was still extremely sensitive.

The case was then lost in the vault of the Industrial Commission until November 1977, when another hearing was held. Claimant testified that the draining had stopped, but that he walked with a limp, that he had not worked or sought work in the interim, that he tires rapidly, and that he has pain in the left leg which spreads to the hips, back, shoulders and right leg. He submitted the report of an examination by Dr. Busch in May 1977 which confirmed the earlier reports and noted that the scar area on the left foot was hypersensitive. The medical report submitted by Goldblatt, resulting from an examination by Dr. Warren Clohisy in June 1977, repeated earlier findings and concluded that Wilcoski's present condition, which was permanent, did not require further treatment. The Commission subsequently found claimant to be permanently

and totally disabled.

Whether an employee has sustained an injury which renders him permanently and totally disabled is a question of fact to be resolved by the Industrial Commission. (*Board of Trustees v. Industrial Com.* (1973), 55 Ill. 2d 293, 300; *South Import Motors, Inc. v. Industrial Com.* (1972), 52 Ill. 2d 485, 489.) Although the Commission's conclusion must be more than mere conjecture (*Paradise Coal Co. v. Industrial Com.* (1927), 324 Ill. 420, 422) and the employee must show his disability by a preponderance of the evidence (*Allis-Chalmers Manufacturing Co. v. Industrial Com.* (1966), 35 Ill. 2d 367, 370), it is the function of the Industrial Commission to resolve conflicting evidence, to draw reasonable inferences from the facts (*Republic Steel Corp. v. Industrial Com.* (1962), 26 Ill. 2d 32, 43), and to conclude from a proper evaluation of all the evidence whether the employee is permanently and totally disabled (*Martin Young Enterprises, Inc. v. Industrial Com.* (1972), 51 Ill. 2d 149, 153). A reviewing court may not disturb the Commission's factual evaluation unless the Commission's conclusion is contrary to the manifest weight of the evidence. *Board of Trustees v. Industrial Com.* (1973), 55 Ill. 2d 293, 300.

The record establishes that claimant sustained a severe injury seriously impairing his use of his left leg and which created a condition in the leg that still causes him considerable pain. An employee need not be reduced to total physical incapacity to be permanently and totally disabled. Total and permanent disability exists when the only services an employee can perform are "so limited in quantity, dependability, or quality that there is no reasonably stable market for them." (*C. R. Wikel, Inc. v. Industrial Com.* (1977), 69 Ill. 2d 273, 278; *Interlake Steel Corp. v. Industrial Com.* (1975), 60 Ill. 2d 255, 259; *South Import Motors, Inc. v. Industrial Com.* (1972), 52 Ill. 2d 485, 488-89.) Moreover, continuing pain from an injury and the inability to obtain employment justify a finding of

permanent and total disability. (*Skokie Valley Asphalt Co. v. Industrial Com.* (1970), 45 Ill. 2d 333, 335.) Considering claimant's physical condition, his continuing pain, and the refusal of his former employer to retain him in any capacity, the Commission's conclusion that he is permanently and totally disabled is not contrary to the manifest weight of the evidence.

Goldblatt concedes its liability for claimant's loss of the use of his leg (Ill. Rev. Stat. 1977, ch. 48, par. 138.8(e)(12)), but contends that his failure to undergo an amputation constitutes a refusal "to submit to such medical, surgical or hospital treatment as is reasonably essential to promote his recovery" (Ill. Rev. Stat. 1977, ch. 48, par. 138.19(d)). Goldblatt therefore argues that it should not be liable for any disability consequent upon claimant's failure to have his leg amputated.

The imposition of an additional financial burden on the employer resulting from the employee's refusal to undergo an operation is not sufficient reason to deny an employee compensation if his decision against the operation is a reasonable one. (*Keystone Steel & Wire Co. v. Industrial Com.* (1978), 72 Ill. 2d 474, 481; *Rockford Clutch Division, Borg-Warner Corp. v. Industrial Com.* (1966), 34 Ill. 2d 240, 247-48.) Whether an employee's refusal to have an operation is reasonable is a question of fact, and the conclusion of the Industrial Commission will not be disturbed unless it is contrary to the manifest weight of the evidence. (*Gidley v. Industrial Com.* (1934), 355 Ill. 586, 593; *O. W. Rosenthal & Co. v. Industrial Com.* (1920), 295 Ill. 182, 184.) The operation urged by Goldblatt is a serious one (*Florczak v. Industrial Com.* (1942), 381 Ill. 120, 129; *Mt. Olive Coal Co. v. Industrial Com.* (1920), 295 Ill. 429, 433), and medical opinion concerning its advisability was not conclusive. The first doctor who operated on claimant decided to try to save the leg. Several medical reports submitted by Goldblatt considered amputation, but only one advised it, and the

most recent report concluded that further treatment was not necessary. Claimant's doctor never recommended an amputation, and the record contains no indication that claimant's refusal to undergo an amputation was made in bad faith (*Keystone Steel & Wire Co. v. Industrial Com.* (1978), 72 Ill. 2d 474, 481; *Rockford Clutch Division, Borg-Warner Corp. v. Industrial Com.* (1966), 34 Ill. 2d 240, 247), and special consideration should be given to the reluctance of an employee to undergo successive operations (*Martin Young Enterprises, Inc. v. Industrial Com.* (1972), 51 Ill. 2d 149, 153). The Workmen's Compensation Act "is designed for employees with divergent personalities, beliefs, and fears. If a claimant's response to an offer of treatment is within the bounds of reason, his freedom of choice should be preserved even when an operation might mitigate the employer's damages." (*Rockford Clutch Division, Borg-Warner Corp. v. Industrial Com.* (1966), 34 Ill. 2d 240, 247-48.) We conclude that the Commission's finding that Wilcoski's refusal to undergo an amputation was reasonable is not contrary to the manifest weight of the evidence.

The judgment of the circuit court of Cook County is affirmed.

*Judgment affirmed.*