HERITAGE HOUSE, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Sharon Bell, Appellee).

Fourth District (Industrial Commission Division)   No. 4—90—0484WC

Opinion filed August 14, 1991.—Rehearing denied October 22, 1991.

McCULLOUGH, P.J., and McNAMARA, J., dissenting.

Karen L. Kendall, of Heyl, Royster, Voelker & Allen, of Peoria, and Gary L. Borah, of Heyl, Royster, Voelker & Allen, of Springfield, for appellant.

William A. Pryor, of Springfield, for appellee.

JUSTICE WOODWARD delivered the opinion of the court:

Respondent, Heritage House, appeals from the judgment of the circuit court, which confirmed the Industrial Commission's (Commission's) award of workers' compensation benefits to claimant, Sharon Bell.

The arbitrator heard this cause on February 17, 1987. In her decision filed August 12, 1987, the arbitrator concluded that claimant's lower back injury, sustained on October 16, 1985, was causally related to her fall at respondent's restaurant on April 26, 1985. The arbitrator further found that claimant was permanently and totally disabled. Upon review, the Commission adopted the arbitrator's findings and conclusions in their entirety.

In the appeal at bar, respondent raises two issues, namely, that the Commission's decisions as to causal connection and permanency of claimant's condition were against the manifest weight of the evidence.

Regarding the issue of causal connection, the following facts are pertinent. On April 26, 1985, claimant was working as a waitress for respondent. While carrying a stack of glasses, claimant slipped on a wet tile floor and fell sideways onto her head. Subsequently, claimant suffered severe headaches and received a variety of prescription drugs to alleviate the pain. Eventually, claimant was diagnosed as having fracture of the zygomatic bone, which was surgically repaired.

Following her injury, claimant experienced a loss of consciousness with accompanying incontinence on at least three occasions. The final of these episodes occurred on October 16, 1985. Claimant went to bed at approximately 8 p.m. to read. At approximately 10:30 p.m., her husband, Roy, went into their bedroom and found claimant "half in and half out of bed." The upper part of her body was on the bed, while at least one of her feet was upon the floor. Claimant was in a half-conscious state and took about 10 minutes to return to full consciousness. She complained of sharp pains in her lower back. Following this incident, on October 17, 1985, claimant consulted with Dr. James Couch, professor of neurology at Southern Illinois School of Medicine, who prescribed Dilantin for control of the alleged spells, which were substantially controlled by the medication. Dr. Couch examined claimant and determined that she had suffered an acute herniated disc. He ordered claimant's admission to Memorial Medical Center on October 31, 1987, and then referred claimant to Dr. Donald Pearson, a neurosurgeon who examined her and subsequently removed a herniated disc at S5-L1.

Respondent argues that the evidence fails to support the Commission's decision that claimant's lower back problems are causally related to the above-described fall at respondent's restaurant. We disagree. It is axiomatic that the Commission's decision will not be disturbed on review unless it is against the manifest weight of the evidence. (*County of Cook v. Industrial Comm'n* (1977), 68 Ill. 2d 24.) It is the Commission's function to resolve disputed questions of fact, including those of causal connection, to draw permissible inferences and to decide which of the conflicting medical views is to be accepted. *Material Service Corp. v. Industrial Comm'n* (1983), 97 Ill. 2d 382.

Specifically, respondent argues that Dr. Couch's testimony was insufficient to establish a causal connection between claimant's fall and her subsequent back injury. The arbitrator's decision stated in relevant part:

"There is no dispute that the fractured facial bone resulted from that accident. The dispute concerns whether the injury to the head caused the subsequent periods of altered consciousness which in turn caused injury to the low back. Dr. Couch's testimony indicates that the periods of altered consciousness could indeed be related to this injury. His testimony was that it is rare for a person to suffer a herniated disc during a seizure. Fractured vertebra are more common than ruptured vertebra during seizures. He did not, however, exclude the possibility that this could occur."

The evidence deposition of Dr. Couch contains the following testimony:

"Q. [I]s her complaint consistent with her history?

A. If I can answer this way. Assuming there was a fall, this could be consistent with a fall-lumbar injury, herniated disk occurring at that point becoming symptomatic over the next 12 hours.

Q. Can you state whether or not it is possible, indeed sometimes more than possible, that patients can receive herniated disks as a result of a seizure?

A. It is possible, it is surprisingly uncommon. Given the intense activity that may go along with a seizure it is probably more common that patients will develop a collapsed fracture of a vertebra. Now, I can't really give a reason why collapse is more common than herniation, but it is very uncommon that patients will develop a herniated disk specifically as a result of a seizure."

■■ Under the totality of the circumstances, the Commission could have found a causal connection between her fall at work and the subsequent back injury. The work-related accident is undisputed. Claimant's testimony that she suffered loss of consciousness on prior occasions is not disputed. The evidence demonstrates claimant experienced a loss of consciousness on October 16, 1985, on which date her husband found her in a semi-conscious state, half in and half out of bed. Claimant had no back problems prior to this incident and immediately experienced back pains which, on the following day, Dr. Couch ascribed to an acutely herniated disc. Dr. Couch's testimony regarding the possibility of a seizure leading to a

lumbar injury, when taken with these facts, supports the Commission's determination as to causal connection.

■ Respondent next argues that there was no evidence of a fall or other trauma to precipitate a disc herniation. This argument is incorrect. As noted above, claimant was found in a dazed condition with her body in an awkward position. Upon reviving, she immediately felt a pain in her lower back. The following day, this pain was diagnosed by Dr. Couch as being caused by an acute disc herniation. Under these facts, the Commission made the permissible inference that claimant had suffered a seizure which, in turn, resulted in her back injury.

■ Further, respondent argues that the subject injury could have been caused by headaches rather than seizures and that the evidence suggests the headaches are not causally related to her back injury. We note that the wording of this argument underscores its lack of persuasiveness. From the evidence adduced at the arbitration hearing, the Commission properly found that claimant suffered seizures and headaches from her fall. Also, there was sufficient evidence in support of the Commission's determination that a seizure rather than a headache was causally connected to claimant's back injury.

■ Finally, respondent argues that claimant failed to prove she is permanently totally disabled. Specifically, respondent contends that there is no medical evidence to support such an award. An employee does not have to be reduced to total physical incapacity to be permanently and totally disabled. (*Goldblatt Brothers, Inc. v. Industrial Comm'n* (1979), 78 Ill. 2d 62, 67.) Total and permanent disability exists when the only jobs an employee can perform are " 'so limited in quantity, dependability, or quality that there is no reasonably stable market for them.' " (*Goldblatt Brothers*, 78 Ill. 2d at 67, quoting *C.R. Wikel, Inc. v. Industrial Comm'n* (1977), 69 Ill. 2d 273, 278.) Further, continuing pain due to an injury and the inability to obtain employment justify a finding of permanent and total disability. (*Goldblatt Brothers*, 78 Ill. 2d at 67-68.) A reviewing court will not disturb the Commission's factual evaluation unless the Commission's conclusion is against the manifest weight of the evidence. As noted above, the Commission adopted the arbitrator's findings, which provided:

> "It is clear from the medical evidence that Petitioner is not able to perform those jobs for which she has training and experience, specifically nursing and restaurant work. Dr. Stauffer indicated in his testimony that Petitioner may be among

the 20 percent of low back surgery patients who ultimately require a fusion. She did get some relief from the body cast he put her in and the subsequent use of various corsets and braces. At the present time, Petitioner has not had a fusion and is not able to obtain employment within her physical limitation."

■ At the review hearing before the Commission, claimant gave the following testimony. Since the arbitration, she had undergone a spinal fusion surgery in September 1987. She experienced pain in her back and left and right legs since the fusion surgery. Claimant had not been able to return to work since the arbitration hearing. She still could not lift any object over 10 pounds because of pain in her back and her legs. Nor could she turn or twist her body in situations such as trying to look out the rear window of a car while driving or riding. Her inability to turn or twist had not improved since her fusion surgery. Claimant's previous jobs as a licensed practical nurse (LPN) and waitress required her to lift items over 10 pounds and to turn or twist her body in the regular course of her employment. Further, she could not carry out her regular household duties. She was not able to run the vacuum cleaner, make the beds, get clothes out of the dryer, put things in the oven, or even wipe off a table. Claimant also had a problem standing or sitting for any extended period of time. Moreover, claimant sought work as an LPN at St. John's Hospital in Springfield. She was not hired. Further, no treating physician had released her to return to work.

The testimony of Dr. Pearson, who last examined claimant in May 1986, is not dispositive as to the permanency and extent of claimant's back injury. Dr. Couch had no opinion as to claimant's back problem. Dr. Stauffer stated that "it is difficult to get people back to work as nurses unless they are fully fit and have no limitations." He opined that, due to claimant's complaints of back pain, she might not be able to perform an LPN's work duties. As to waitressing, Dr. Stauffer was too unfamiliar with the job's demands to make an informed judgment as to whether she could perform that job.

Clearly, the Commission based its decision as to the permanency and extent of her back injury in large part upon claimant's testimony. It was entitled to do so. (See *Skokie Valley Asphalt Co. v. Industrial Comm'n* (1970), 45 Ill. 2d 333, 335.) Under the evidence adduced, the Commission could find that claimant was incapacitated to the point that she was totally unable to secure permanent em-

ployment. The respondent could have rebutted said conclusion by demonstrating that work within claimant's limited capacity was reasonably available. (See *Inland Robbins Construction Co. v. Industrial Comm'n* (1980), 78 Ill. 2d 271, 276.) Respondent failed to do so.

Accordingly, we affirm the circuit court's judgment.

Affirmed.

LEWIS and STOUDER, JJ., concur.

PRESIDING JUSTICE McCULLOUGH, dissenting:

I disagree with the majority, which finds causal connection between claimant's fall at work and the subsequent back injury.

As the majority states, the arbitrator, referring to causal connection, work-related injury, and subsequent herniated disc, found Dr. Couch's testimony "did not, however, exclude the possibility this could occur." Dr. Couch's statement, "[I]t is possible, it is surprisingly uncommon," along with his further statement, "I think it is a possibility, but I don't think a very good one," does not show causal connection. Dr. Couch, a treating physician, was fully informed of the claimant's medical history, the work-related accident, and the history of headaches and seizures. To allow recovery in this case will eliminate any requirement that causal connection be proved to a reasonable degree of medical certainty in cases requiring expert testimony. This is such a case.

Possibility of causal connection is not the standard required. The arbitrator, Commission, and majority decision rely upon Dr. Couch's testimony to find causal connection. Dr. Couch, however, found only a "possibility." The Commission's decision is against the manifest weight of the evidence.

The decision of the Commission awarding permanent disability is also against the manifest weight of the evidence. The claimant has not shown by a preponderance of the evidence she is permanently totally disabled as a result of the April 26 work-related accident. She is not obviously unemployable.

McNAMARA, J., joins in dissent.